### No. 6610.

MRS. MARY E. KIRKPATRICK, WIFE OF O'BRIEN, VS. FINNEY & BYRNES ET AL.

A donation *inter vivos* of movable property can only be made in two ways; by act before a notary and two witnesses, or by actual manual delivery; and one who claims a movable in virtue of a donation, must prove that the donation was specifically made, in one or the other of those two ways.

A transfer, or donation to his wife of furniture, or other property made by an insolvent husband is, *prima facie*, fraudulent and simulated; and such property may be seized by the husband's creditors, and if seized, the burden will be on the wife to prove the real, and the *bona fide* character of the assignment.

APPEAL from the Fourth District Court, parish of Orleans. *Houston*, J.

*Semmes & Mott* and *J. E. Austin* for plaintiff and appellee.

*Bentick Egan* for defendants and appellants.

The opinion of the court was delivered by

EGAN, J. This suit is between the same parties, and was tried upon the same evidence with suit No. 6620 of the docket of this court just decided. It was brought to enjoin the seizure under the same judgment as in that case of certain articles of household furniture and personal property in the house occupied as a residence by plaintiff and her husband, J. J. O'Brien. The pleadings of both plaintiff and defendant are substantially and almost in terms the same as those in 6620. The evidence is not more satisfactory in support of the demand of the wife plaintiff in this case, than it was in that just decided. If entitled to any part of the property seized she has not identified it. Both claims rest substantially on a similar or the same state of facts, and are governed by the principles announced in the opinion in 6620 ; and for the reasons stated in that case it is unnecessary to pass upon either the plea of prescription or the validity of the judgment of separation. There was the same error in admitting in this case the evidence in the case for separation which has been remarked upon in case 6620. We are not

here called upon to pass upon the exemption under any law of any portion of the property of the husband. He is not before us asking such exemption, if entitled to it to any extent and for any reason. The claim asserted is that the property seized under execution against the husband belongs not to him but to the wife, *and is therefore* and *not by reason of any exemption in his favor*, not liable to be seized or sold to pay his debts. To avoid misapprehension, however, we may as well remark that in our opinion the exemption of fees and salaries of office can not be extended by implication to property purchased with them or with money derived from them.

It is therefore, and for the reasons given in 6620, ordered, adjudged, and decreed that the judgment of the court below be annulled, avoided and reversed, and the injunction sued out by plaintiff be dissolved, and her claim to the property seized under the *fieri facias* in this case be disallowed. As, however, the parties and sureties on injunction bonds are the same in this case and in case 6620, just decided, and as the judgment in that case awarded interest and general damages on the same debt and judgment, we simply decree in this case furthermore that the defendants Finney & Byrnes do have and recover from the plaintiff and John Phelps & Co. and Isaiah Green, sureties on injunction bond, *in solido*, two hundred dollars damages as counsel fees in this case and costs of both courts.

---

### On Rehearing.

In relation to the furniture other than the piano claimed by the plaintiff there is no proof of identity nor any of a donation by manual delivery or otherwise. It is too well settled to require the production of authority that no mere admission by the husband, whether judicial or other, of ownership in or of a donation to the wife can affect third persons or supply the place of that evidence of donation which the law requires. Neither is there any evidence of any formal act of donation or of such or any manual delivery of the piano by O'Brien to his wife so as to dispense with the written authentic act, which as a rule is required to effect a donation *inter vivos*. The only evidence is that at the time he purchased the piano the husband told Grunewald, the vendor, that he wanted it for his wife. The fact that the piano was found afterward in the common domicile of the husband and the wife—a domicile which in the other case we have decreed to belong to the husband— is of itself no evidence of manual delivery. A mere purchase with intention to donate, or the declaration of such intention is not enough ; that intention must be carried out in some one of the modes prescribed by law. The general rule is the execution of a formal notarial act, C. C.

1536, 1538, the only exception to which in regard to property susceptible of it is *the actual manual delivery*. Neither are proved in this case. Had there in fact been such real manual delivery the plaintiff might have proved it by her own testimony at least, if not by that of other witnesses. The fact that she has not done so, nor even attempted to do so, by no means strengthens her pretensions in this respect. It has often been held by this court, and such is the law, that the fact of the husband in failing or insolvent circumstances transferring or attempting to transfer to his wife's name the whole of his property, as was done by O'Brien, is not merely evidence of fraud, but of simulation, and puts upon her the burden of proof. A piano might have been a very tasteful and appropriate gift from the husband to the wife, but that fact does not of itself prove that such was made. The same might be said of the furniture and other decorations of the common dwelling. It is not uncommon, indeed, it is most usual to furnish the marriage domicile with a piano, without making it a special gift to the wife, that it may be used by the family or for the entertainment of visitors and to gratify the taste of both. Nor, indeed, are ladies now-a-days by any means the only performers upon that instrument. These is no sufficient reason to exempt the piano from the fate of the remainder of the furniture seized.

The court was induced to grant a rehearing owing to an error into which we had fallen in our original decree, in allowing attorney's fees in this case as covered by the agreement of counsel. It is denied that such was the intention of the agreement, and although we can very well see how the defendants' counsel, as well as the court, was misled as to the scope of this agreement, we do not think its terms cover the present case. It is therefore ordered that the decree heretofore rendered by us be so amended as to disallow the defendants' claim for attorney's fees in this case, and that in all other respects it is affirmed, except as to the costs of appeal, which are to be paid by the appellee.

---

## DISSENTING OPINION—ON REHEARING.

SPENCER, J. In order to maintain her suit for separation of property and dissolution of the community, it is not essential that the wife should be the owner of separate property, or that the husband should be indebted to her. It is now settled that where his affairs are so disordered and his financial embarrassments so great as to render any earnings or acquisitions of the wife by her own industry insecure, that she may maintain such a suit. Clark vs. Lowry, 10 A. 273 ; Webb vs. Bell, 24 A. 75 ; Davock vs. Darcy, 6 R. 342.

A wife's judgment may, therefore, be good so far as it operates a separation of property and dissolution of community—and bad so far as

15

it establishes title to specific property or indebtedness on part of the husband.

As against the creditors of the husband, the wife's judgment is no evidence of her ownership of property adjudged to her or of her husband's indebtedness to her. In other words, such a judgment does not *ex proprio vigore* prove or establish either ownership or indebtedness, as against the husband's creditors ; and it is to this branch of such judgments that I think should be applied the rule so often recognized by this court, that the wife must prove *aliunde* (otherwise than by her judgment) the truth and verity of her paraphernal and dotal claims, as established by the judgment against the husband, whenever attacked or questioned by his creditors as fraudulent or simulated. The burden of proof is on her to establish her claims, and her judgment is not even *prima facie* evidence thereof. 2 A. 544 ; 8 N. S. 403, 459 ; 4 L. 422 ; 11 L. 534.

I think, therefore, that the judgment obtained by plaintiff in this suit against her husband was and is valid, so far as it separates her in property and dissolves the community. But, as I have said, so far as relates to the personal property and furniture, which is decreed to belong to the wife, the judgment is no proof of the fact of her ownership. It was incumbent on her to show *dehors* that judgment her ownership. I have critically and carefully gone over the whole evidence in both records and must say that I find no proof whatever that Mrs. O'Brien ever owned the furniture in controversy. In fact her counsel in the oral argument admitted that unless the husband's admission in his answer to the separation suit amounted to a donation, to a manual gift, or rather was good evidence of such gift, the wife had no claim to ownership. He rests the whole case on the proposition that the husband had made a gift of the furniture seized to his wife, and that the evidence, and only evidence, of that gift was found in the husband's said answer. Now let us see what was "claimed by the wife," and "admitted by the husband." She alleges that "*since her marriage with her husband,* she has become the owner of *certain personal property and household furniture in this city,* valued at $3000." The husband "admits his marriage with plaintiff and her ownership of the household furniture." What household furniture? The evidence taken in the case is equally vague as the pleadings. Only one witness even mentions where these parties were living. It is her brother. He says they were living at 459 Magazine street. That he had seen furniture in that house—parlor furniture, dining room and bed room furniture. That is all. He does not say that the furniture in 459 Magazine street was that claimed by the wife as her separate property, and admitted to be such by the husband. The judgment is equally at sea. It simply declares her

owner of the property described in her petition. The clerk, however, (who, by the by, was the husband himself) issued a writ of possession commanding the sheriff to put the plaintiff in possession of all the household furniture *in the premises* 459 *Magazine street.* The pleadings did not ask, the evidence did not prove, nor did the judgment decree, any right TO THAT writ. But suppose the wife had specified the articles of furniture claimed, their location at 459 Magazine street, and value. Suppose the husband had, with the same minuteness admitted her ownership, and even admitted that he had given her *that specific furniture*, and suppose we were to admit that that was sufficient proof of the gift of that particular furniture in the house 459. Yet when we open the record in this suit, we are unable to find a scintilla of evidence *that the furniture which was at* 459 *Magazine street, in June*, 1874, was or is *the same furniture* which the defendants *caused to be seized in the house of plaintiffs, on Jackson street, in November*, 1875, and which is now in controversy. We think, therefore, that there is no legal or sufficient proof that J. J. O'Brien ever, in point of fact, gave or intended to give his wife the furniture under seizure and control in this case.

If the intent of the husband to give his wife the furniture mentioned in her petition for separation were ever so clearly expressed, it would be ineffective for want of identification of the objects intended to be given. The gift of "a lot of furniture in the city of New Orleans, worth $3000," is void for uncertainty, if for no other reason.

So far as relates to the furniture, therefore, I find it unnecessary to decide whether the husband's admission of the wife's ownership is sufficient proof in itself of a donation; first, because, if it were, the intent to donate would be without effect for uncertainty as to its objects. Second, because, if its objects were specified and identified as the furniture in No. 459 Magazine street, there is no proof of the identity of that furniture with that seized in the house on Jackson street.

The case, however, is different with regard to the piano which was acquired *after the dissolution* of the community. After the community is dissolved—that ideal being has ceased to exist, there can be no presumption that property acquired in the separate name of the wife belongs to that being which had ceased to exist before the acquisition. But the fact that the wife has acquired property in her own name, after the dissolution of the community, does not estop or prevent the creditors of the husband or of the community from showing that it belongs in fact to the husband. And the fact that the wife had no means or sources of income enabling her to make the acquisition, and that the husband had such means would be cogent proof that the husband had paid for it, and was in reality its owner, and that her title was fraudulent and simulated. Such fact being shown, the *onus* would certainly be on her to

show affirmatively where she acquired the means of purchasing it. But in this case, as we understand her counsel, the wife does not pretend that she purchased the piano with her own funds—or rather with funds derived from any one else than her husband. Her proposition is that the husband bought the piano for and as a gift to her. I think the evidence of Grunewald, the vendor, shows that such was the fact, and that this evidence is strengthened by the inherent probabilities of the case. A piano is such an article as a newly married man would' most likely make a present of to his wife, on going to housekeeping. Such a gift is essentially free from that suspicion of fraud and simulation which would inevitably attach to the case where the husband pretended to have given all his household effects to his wife. It would be difficult to convince me of the *bona fides and reality* of such a transaction. It would bear the brand of falsehood on its very front.

But, as stated, I think the evidence in this case shows that the husband bought the piano for and as a present to his wife. Donations of corporal movables, accompanied by *a real delivery,* are subject to no formality. O. C. C. Art. 1526. But if there is no *real delivery* they are void. unless passed before a notary and two witnesses. C. C. Art. 1525. I think that there was a real delivery in this case—i. e. that the piano was put into the possession and under the' control of the wife, as completely as it could be in the nature of things—where the donor and donee lived together. There was here·then "a manual gift." The only remaining question is,.are such gifts lawful between husband and wife? Art. 1739 O. C. C. declares that "Either of the married couple may, either by marriage contract or during the marriage, give to the other in full property all that he or she might give to a stranger." Art. 1742, "All donations made between married persons, *during marriage,* though termed *inter vivos,* shall always be revocable." It seems, therefore, that the only difference between the power of giving to a stranger and that of giving to a husband or wife consists in the revocability of the latter gifts. Whilst, therefore, the right and power to give, during marriage, to each other, exists in the husband and wife, courts will scrutinize rigidly such transactions where they are made to the prejudice of creditors. Such contracts are open to a double suspicion—to that attaching to all gratuitous contracts, created by Art. 1975 C. C., and to that growing out of the relations of the parties. I think, however, that the gift of the piano in this case was not *a mere simulation,* and, therefore, even if made *in fraud* of the creditors, that it can be questioned only by the revocatory action, not by seizure. The injunction should, therefore, as to the piano, be perpetuated, with reservation to the creditor of the right to proceed by the revocatory action.

I therefore dissent.