ODOM, Justice.
 

 Plaintiff obtained judgment against Manuel M. Vega for $2,000 on May 22, 1934, in a suit on a promissory note. Prior to that date, but while the suit was pending, Manuel M. Vega, husband, made a dation en paiement to his wife conveying to her all of his property, both real and personal, for a recited consideration of $5,200, stated in the act to have been her separate and paraphernal funds received and made use of by him in his private affairs and business. In addition to this consideration, his wife, Mrs. Paule Marie Delery Vega, who joined her husband in the notarial act of transfer and accepted the same, unconditionally assumed, bound, and obligated herself “to pay and discharge, in lieu, place and stead of and at the complete release and discharge of her said husband, the following described mortgages, debts and obligations of the same Manuel Vega.”
 

 The mortgages assumed operated against the real estate conveyed, the balance due amounting to approximately $6,050. It seems to be conceded that the value of the property transferred was about equal to the debt stated .to be due the wife and the amount of the debts assumed by her.
 

 Plaintiff, the judgment creditor of the husband, brought this suit to set aside the dation en paiement, alleging that it was null, void, and of no effect for the following reasons : First, that a wife cannot bind herself for the debts of her husband, or of the community; second, that the giving of movables as part of a dation en paiement is prohibited by law; and, third, that the recitals of fact by the husband in the act are untrue.
 

 The defendant in answer specifically denied the allegations made by plaintiff and alleged that he had received from his wife and used in connection with his own private business and affairs more than $5,200, which amount was her separate and paraphernal funds. There was judgment in favor of plaintiff, setting aside the dation en paiement, and the defendants appealed.
 

 The answer to plaintiff’s first objection is found in Act No. 283 of 1928, the title of which reads as follows:
 

 “An Act to emancipate married women from all the disabilities and to relieve them from all the incapacities to which, as such, they are now Subject, and to empower them, in any form or manner permitted by law
 
 *389
 
 for any person, married or unmarried, of either sex, to make contracts of all kinds or to assume or stipulate for obligations of all kinds; and to abolish the authority of husbands over married women, in respect to contracts and obligations and to appearance in judicial proceedings; and to provide that nothing herein contained shall modify or affect the laws relating to the matrimonial community of acquets and gains.”
 

 The pertinent part of the body of the act is section 3, which reads as follows;
 

 (Be it enacted) “That married women shall have capacity to bind themselves personally in any form, or to dispose of or hypothecate their property, by way of security or otherwise, for the benefit of their husbands or of the community between them and their husbands.”
 

 Counsel for plaintiff cites Simpson v. Mills, 12 La.Ann. 173; LaCroix v. Derbigny, 18 La.Ann. 27; Hayden v. Nutt, 4 La.Ann. 65; Oliver v. Dayries, 23 La.Ann. 439; and Glaze v. Duson, Sheriff, 40 La.Ann. 692, 4 So. 861, 862, in support of his argument that a dation en paiement by a husband to his wife, wherein as part of the consideration of the transfer she assumes any of the debts of the husband, is an absolute nullity. But the cited cases do not support his contention, because they were decided long before the complete “emancipation” of married women in this state.
 

 In the cited cases it was held in substance that it mattered not whether a wife was or was not separated in property from her husband; she was not in either case permitted to bind herself or her property either with or for her husband for debts due by him, whether before or after marriage. However, she might accept property transferred in satisfaction of her claim cum onere, in which case she would not become personally liable for the payment of the charges against the property, merely taking it subj ect to the debts.
 

 In Glaze v. Duson, Sheriff et al., supra, Chief Justice Bermudez explained the difference between a wife’s acceptance of the property cum onere and assuming the debts of her husband as follows:
 

 “The reason for this is obvious: that, in the first case, she retains the amount and takes the property with the privilege of surrendering it ,in the event of an hypothecary action or the like, without incurring any personal obligation, should it not realize sufficiently to satisfy the debt; and that, in the second case, that of assumption, not only would the property be liable to seizure and sale, for the payment of the debt, but, besides, would she, in case of deficiency, be personally responsible, and her separate estate subjected to the payment of the wanting amount?”
 

 _ The law permitted at that time a contract of sale between husband and wife “when the transfer made by the husband to his wife, even though not separated, has a legitimate cause, as the replacing of her dotal or other effects alienated.” Civil Code, art. 2446. But the law at that time prohibited the wife from binding herself for the debts of her husband, whether contracted prior to or during the marriage. Article 2398 of the Civil Code reads as follows:
 

 
 *391
 
 “Wife Can not Bind Herself for Debts of Husband Existing Previous to Marriage. The wife, whether separated in property by contract or by judgment, or not separated, can not bind herself for her husband, nor conjointly with him, for debts contracted by him before or during the marriage.”
 

 That is no longer the law. Married women were relieved of such incapacities by Act No. 283 of 1928.
 

 As to the second point, we find no merit in the argument that the transfer is void because personal property was included. Counsel cites article 2446 of the Civil Code; Kirkpatrick v. Finney & Byrnes, 30 La.Ann. 223; Bienvenu v. Prieur, 28 La.Ann. 758; and Heyman v. Sheriff, 27 La.Ann. 193, as supporting his contention.
 

 The article of the Code cited speaks of the “transfer of property,” but does not specify what kind of property! We see no reason why either real or personal property may not be transferred by the husband to his wife in satisfaction of her claim. The cases cited do not support the contention.
 

 In the Kirkpatrick Case the husband made a donation inter vivos to his wife of certain personal property and the court set aside the transfer as fraudulent and simulated. But the transfer was not made in satisfaction of the wife’s paraphernal claims against her husband.
 

 In the Bienvenu Case the property transferred was in the Third district of the city of New Orleans, valued at $15,300. There is nothing to show that the transfer included personal property.
 

 In the Heyman Case the only property involved was a lot of ground and buildings thereon, no personal property being menr tioned.
 

 The next and last reason urged why the donation is void is that the testimony fails to show that Mrs. Vega ever had separate and paraphernal funds amounting to as much as. $5,200, the amount stipulated in the transfer, and that if she did have that much it is not shown that her husband obtained and used, it in his private business and affairs.
 

 According to the testimony of Mrs. Vega, it appears that she had earned and saved $600 as a result of her own labors before she was married; and the testimony of her brother shows that she received $500 as a special legacy from Her father, $286, proceeds of one life insurance policy, $1,600, proceeds of another life insurance policy, $891, as her distributive share of her fathers estate, $600.50 as an inheritance from her grandmother, and $744.38 as her distributive share of her grandfather’s estate; these amounts aggregating $5,221.88.
 
 A.
 
 bank book offered in evidence shows that Mrs. Vega had a savings account with the Citizens’ Bank & Trust Company of New Orleans opened on October 20, 1919, several months before she was married, and from that date down to June 6, 1921, she deposited in that bank various amounts totaling $4,682.19. Mr. Vega testified that the $286 received by his wife on an insurance policy in the Catholic Knights of America was paid her by check, which she indorsed over to him, but which he never deposited in
 
 *393
 
 the bank. He also said that she indorsed to him the check for $744.38, her share of her grandfather’s estate, and that he did not deposit this either. Mr. Delery, Mrs. Vega’s brother, was connected with the Citizens’ Bank & Trust Company, in which she kept her account, and testified that he was administrator of his father’s succession and knew personally that she had received from her father’s succession and that of her grandmother and grandfather and from certain insurance policies amounts exceeding $4,600. These amounts, together with what Mrs. Vega testified she earned before her marriage, makes a total sum exceeding the amount of the debt set out in the dation en paiement. As to the amount which Mrs. Vega said she earned and deposited in the bank prior to her marriage, Mrs. Vega’s testimony is not corroborated. But her testimony was not contradicted as to that.
 

 The testimony supports the holding that Mrs. Vega came into possession of slightly more than $5,200 as her separate paraphernal funds. We think it also support's the conclusion that this amount went into the hands of her husband and was used by him. She and her husband both so testified, and their testimony is positive to that effect.
 

 In order to show that the entire amount of Mrs. Vega’s paraphernal funds was not turned over to and used by her husband, the plaintiff called Mrs. Joseph Vega, the wife of Manuel Vega’s brother, who testified that Mrs. Manuel Vega told her that she had paid $850 for an automobile out of her separate funds, and that she had bought a trousseau out of part of it. Mrs. Manuel Vega positively denies this. She admits that she and her husband purchased an automobile, but Mr. Vega testified that he paid for it out of his own funds. Cross-examined as to the trousseau, Mrs. Joseph Vega testified that she didn’t know how much Mrs. Manuel Vega had paid for it and that all she knew was that she had a nice wedding gown in a cedar chest, and that she had purchased several articles from Sears, Roebuck & Co. The testimony of Mrs. Joseph Vega is considerably weakened by the fact that she admitted that her family and that of Manuel Vega were not on good terms. She was asked if there was not bitterness between the two families, and she said there was, and stated the reasons why.'
 

 The testimony of both Mr. and Mrs. Manuel Vega is positive to the effect that Mrs. Vega turned over to her husband at various times and in various ways all of her paraphernal funds, and there is no substantial testimony to the contrary. Both Mr. and Mrs. Manuel Vega testified that this amount had never been returned by the husband up to the time this dation en paiement was made. We think the judgment setting aside the dation is erroneous.
 

 For the reasons assigned the judgment is reversed, and it is now ordered that there be judgment in favor of the defendant rejecting plaintiff’s demands and dismissing his suit at his costs.
 

 O’NIELL, C. J., absent.