## FRAZIER v. F. STRAUSS & SON, Inc., et al.*
## No. 5312.

Court of Appeal of Louisiana. Second Circuit.

Feb. 5, 1937.

Dhu Thompson, of Monroe, for appellant.

Theus, Grisham, Davis & Leigh, and Hudson, Potts & Bernstein, and Montgomery & Dorman, all of Monroe, for appellees.

TALIAFERRO, Judge.

Plaintiff, a guest passenger in the Chevrolet coach of Aaron T. Stout, was seriously injured when that car collided with the left rear portion of a disabled Dodge truck of defendant F. Strauss & Son, Incorporated, on the Dixie-Overland concrete highway opposite the east entrance to the Louisiana Baptist's children's home, four miles east of the city of Monroe The locus of the collision is on a tangent of 324 feet, connecting two curves, and is about 50 feet from its west end. The east curve, as a driver goes westerly, is much narrower than that at the western end. Stout's car was going east at a rate of speed, we think, not in excess of 40 miles per hour. The disabled truck was being pulled by a Chevrolet coupé, going westerly, at a less rapid speed. The accident occurred about 3:30 o'clock on a cold January morning. The left front wheel of the Stout car struck the truck about its rear left wheel and then traveled diagonally (northeasterly) across the road, down a grade toward the waters of Bayou De Siard, and rested against some willow trees, 42 feet from the north edge of the pavement. The truck stopped on the road or its right shoulder a short distance from the point of collision. Mr. Stout and plaintiff occupied the front seat of his car, while Earl W. Russell and Miss Jessie Boggs were on the rear seat. The coupé was being driven by Charlie Freeman, accompanied by Henry Nicholson. The truck was being piloted by Roy Bealin.

*Rehearing denied 173 So. 343.

All three are negroes. The truck was attached to the coupé by means of a chain, one end being tied to the left end of the coupé's axle and the other tied to the left front spring of the truck. There were approximately five feet of the chain between the two vehicles, which allowed the truck to execute lateral movements.

Plaintiff charges that the accident was caused by the concurring negligence and carelessness of Stout and the negroes, servants of F. Strauss & Son. Both were made defendants. The carriers of their public liability insurance, respectively, the Travelers Insurance Company and Sun Indemnity Company, were also joined as defendants. It is specifically charged that the truck was being pulled in a careless and negligent manner and in excess of a reasonable speed, considering the darkness of the night and the curvitures of the road on each side of the point of accident; that the truck was swinging to and fro across the black center line of the road, and was on its left side of said line when collided with; that said negro drivers were not keeping a proper lookout; that the truck's pilot's view of the highway ahead was obscured by the car in front of him; and that he did not keep the truck on its side of the highway. So far as regards Stout, the only negligence ascribed to him is disclosed from the allegations of article 13 of the petition, which we quote:

"The said A. T. Stout contributed to said accident by not slowing down his speed as he approached the oncoming truck and in not getting out of the road or pulling out of the road in time to avoid a collision with said truck and in permitting the truck to strike his car."

The petition was excepted to by Stout and his insurer on the ground that it disclosed neither a right nor a cause of action as to them. The exceptions were overruled, but we think erroneously, as we shall endeavor to demonstrate hereafter. They are urged here. These defendants deny that the accident was caused by any negligence on the part of Stout, but affirmatively aver that the negligence of F. Strauss & Son's agents and servants was the sole cause thereof; such negligence, it is alleged, consisting of the same elements as declared upon by plaintiff.

In the alternative, should it be found and held that the negligence of Stout caused or contributed to the accident, in such event it is then averred that plaintiff contributed thereto in that she was aware of the manner in which his automobile was operated and acquiesced therein in all respects without protest or objection and, accordingly, was guilty of such independent negligence on her own part as to bar recovery.

F. Strauss & Son and its insurer deny that the accident was caused by any negligence or carelessness of the servants of the former, but, on the contrary, was solely due to the carelessness and negligence of the driver of Stout's car. It is averred that the coupé and truck were both on their proper side of the road when run into by the Stout car which at the time was traveling at 60 miles per hour, with only one headlight burning; that it passed the coupé and then crossed over to the north or wrong side of the center line of the road and struck the truck. They further aver that plaintiff was then driving the Stout car and, on information and belief, charge that both Stout and plaintiff were highly intoxicated; that they had been driving about in said car all night and had consumed large quantities of whisky and other intoxicants during that time. The following specific acts of negligence are charged to the operator of the Stout car and alleged to be the cause of the accident:

(a) The operation of the vehicle in the darkness of the morning at a rapid rate of speed, approximately 60 miles per hour, with only one headlight burning;

(b) The driver failed to keep a proper lookout down the highway for oncoming traffic;

(c) The driver's conduct in crossing the center line of the highway to the north side thereof and striking the truck in the manner above described;

(d) The failure of the driver to keep the automobile at all times on the right or south side of the center line of the highway; and

(e) The intoxication of the driver.

In the alternative, the contributory negligence of plaintiff is pleaded in bar of her right to recover, the elements thereof being the same as urged by Stout and his insurer; and in addition, that her state of intoxication rendered her incapable, both mentally and physically, of warning the driver of the Stout car of the dangers of the highway; that she was negligent in riding in said car with a

driver she knew to be intoxicated and in no condition to safely operate same; all of which acts of negligence are urged in bar of recovery by her.

Plaintiff's demands were rejected against all defendants and she has appealed.

██ The allegations of the petition do not disclose a cause of action against Stout. The only suggestions of negligence on his part are that he did not slow his car down as he approached the truck; that he did not quit the highway to avoid the collision; and that he allowed the truck to strike his own car. The pilot of the truck is charged with steering it across the black line, and this is the most serious allegation of negligence made against him. Therefore, it follows from this allegation that Stout's car was on its proper side of the road when the collision occurred. It is not alleged that he observed, or could have observed, the pilot's negligence in time to avert the accident, and it does not appear in what respect the slowing down of his own car would have reduced the chances of an accident or prevented such. There is no duty resting upon a motorist to reduce his speed, when not driving recklessly, when meeting another car on a broad highway, at which time there are no unusual circumstances or conditions requiring that such be done; and in addition, it is neither alleged nor does it appear that the accident would have been averted had the car's speed been reduced. The reason for such paucity of charges of negligence against Stout is made clear when we project our examination into the testimony touching the merits of the case. Plaintiff's testimony absolves him from any fault whatever as a contributing factor to the accident.

No witnesses were present at or saw the accident, save the occupants of the Stout car and the three negroes in charge of the other vehicles. The two negroes riding in the coupé, we are quite certain, did not see the collision, nor could they have done so, nor did they know, with reference to the black line, the relative positions of the truck and Stout car. The cab of the truck was immediately at their rear. Its lights were burning. It is highly improbable that they took any note of the Stout car after it passed the coupé. The coupé was closed, the night dark and very cold. There was no reason whatever for them to have tried to observe it after passing. The boy piloting the truck testified that it was two feet from the black line when the collision occurred, while all occupants of the Stout car are certain, and testified, that the corner of the truck was that distance or about on their side of the line. We are of the opinion that this version of the position of the two vehicles at the time of impact is the correct one. The coupé was on its side of the center line when passed by Stout's car. It is the position of defendants that the Stout car, immediately thereafter, cut to its left and ran into the truck. This, in the usual run of such matters, seems most improbable. It is positively denied by all four of the Stout car's occupants. The combined speed of the two cars was at least 70 miles per hour; 103 feet were covered per second. As the Stout car neared the coupé, only its lights could be seen by the driver. The moment the coupé was passed, the outline of the truck and its position on the road were observed. The collision occurred within less than half a second thereafter. It would have required quicker resolution and action to obviate the collision, in such circumstances, than most persons possess, and the failure to have done so is not actionable negligence.

In corroboration of the testimony of the truck's pilot, that the vehicle was on its side of the road when struck by the Stout car, testimony was introduced to prove the presence of skid marks and brake fluid on the concrete north of the black line at or near the point of collision. The brakes of the truck were not in working order, according to the pilot's testimony, and for this reason were not applied, and not having been applied, the truck could not and did not skid. The fluid from the disabled brake set-up would hardly have escaped to the pavement exactly at the spot of impact. A fraction of a second only was necessary for the truck to have reached where the fluid first appeared.

The circumstances strongly support plaintiff's theory of the truck's position on the road. Being some five feet from the coupé, it was possible for it to swing back and forth across the middle line and especially would such motion be expected when rounding curves. It had just emerged from a sharp curve to its right and had not regained its side of the road when the collision happened.

We do not think plaintiff was driving Stout's car. Whether she was doing so

or not is immaterial to a correct decision of the case, in view of our findings on the question of the driver's negligence. The three negroes testified that after the car rested, down the embankment, following the collision, its dome light only was burning and they saw through the rear window the position of plaintiff and Stout and that she was under the wheel. At that time she was badly shocked, bleeding and at least semiconscious, and certainly not in a condition to be erect at the wheel; and, in addition, the negroes from their position upon the road could not have clearly observed conditions in the car through the small rear window.

██ F. Strauss & Son and its insurer urge seriously and at length that this was a drinking party, out for a jolly time, and that the car's operator, whether plaintiff or Stout, was under the influence of strong drink. All members of the party deny having drunk any intoxicants from the time they left Delhi, La., at about 11 o'clock that night, until the accident. The circumstances were such that drinking to some extent by these people would, in the ordinary course of such affairs, have been expected. All admit they are not total abstainers. The evidence does not convince us that either Stout, Russell, or Miss Boggs were intoxicated. Miss Boggs made the ascent back from the car to the highway unassisted and began to direct her attention toward proceeding on to Delhi, 35 miles away, where she was employed. Russell's action at the time negatives intoxication on his part. Stout accompanied plaintiff to the clinic of Dr. Mosely, in Monroe, and assisted the doctor and his nurses for more than an hour in sewing back her nearly severed ear. Dr. Mosely and his two nurses are positive Mr. Stout was not intoxicated. His actions and movements from the time of the accident, until the operation was finished, belie the charge of intoxication.

We might add here that should it be conceded that because of interest, Stout and plaintiff would be inclined to color their testimony to some extent, there does not appear any good reason for Russell and Miss Boggs to do so; and their testimony fully corroborates that given by plaintiff and Stout.

The record in the case is voluminous. To analyze and discuss all of the collateral ramifications of the testimony would un-necessarily enlarge this opinion. The case turns upon a question of fact, and, having resolved that question in plaintiff's favor, it only behooves us to give our findings and the reasons for doing so.

██ Plaintiff's right ear was severed, excepting a thin connection of skin at its upper end one-eighth of an inch wide. Approximately 100 stitches were necessary to restore and reunite it to its original position. To some extent the operation had to be repeated to effect proper union. The operation was skillfully performed and only a scar remains to evidence the near loss of that important factor to the sense of hearing. The head of the right tibia was crushed, producing what is known as a comminuted fracture. Reduction was not attempted on account of the nature of the bone's injury. Dr. Mosely, the only physician who testified in the case, on this point stated that it would be "just like trying to build with a pile of chips." The knee was put in a cast and weights used in the effort to maintain proper alignment during the healing period. There was also a fracture of that part of the femur which fits into the knee joint. An X-ray, taken a day or two prior to trial on April 22d, discloses, according to Dr. Mosely, that there is no union between the head of the tibia and "its outside portion that produces (sustains) the weight bearing on the bone." There was a "spreading out" of the end of the tibia which threw it out of line with the end of the femur. This lack of correct apposition affects the weight carrying ability of the entire leg. These deficiencies in and about the knee joint Dr. Mosely did not believe could ever be entirely corrected, and would render plaintiff a cripple for life. In addition to the ear and knee injuries, she suffered a distinct fracture of the sacroiliac joint. The nature and effect of such an injury is well known to all. Dr. Mosely definitely stated that in his experience of many years as a physician, he had not seen a complete recovery from such a wound. By appropriate treatment the intense and continuous pain from such a fracture could be reduced, but the fracture would remain. On account of these wounds, plaintiff has suffered excruciating pains and still suffers them. It is more than probable that these to some extent, sufficient to materially affect her ability to discharge the duties

of store clerk and beauty operator, the line of business she is trained to follow, will persist through life.

Plaintiff remained in the clinic from the date of the accident until March 11th, a total of 48 days. She owes Dr. Mosely $596.30. She was a patient of the clinic when this case was tried, and Dr. Mosely thought she should stay there for at least two months. The nature of her injuries made it imperative, for the best results to be attained, that she do this. The additional cost of appropriate treatment during such time would not be less than $500, possibly more.

In addition to the above-discussed major injuries, plaintiff received many minor ones and a multitude of bruises and abrasions. She was badly shocked and knocked unconscious. She is twenty-six years of age, has a daughter nine years old, and, prior to the accident, was physically sound and was earning $12 per week.

There is no fixed rule, from the very nature of things, for the measure of personal damages. The facts of each case necessarily must be the predicate for assessing same. However, courts strive to follow as nearly as may be a rule of uniformity. It is imperative that plaintiff should spend two or three more months in a sanitarium and be treated by experienced physicians, if her condition is to be ameliorated to the extent possible. This will cost about $500. We think she is entitled to $8,000 for shock, injuries, and suffering, and their effect. She owes Dr. Mosely $596.30. An award for these amounts, aggregating $9,096.30, is in line with those given in the following cases decided by this court: Thorgrimson v. Shreveport Yellow Cabs, Inc. (La.App.) 161 So. 49; Galbraith v. Dreyfus et al. (La.App.) 162 So. 246.

For the reasons herein given, the judgment of the lower court in rejecting the demands of plaintiff against F. Strauss & Son, Incorporated, and Sun Indemnity Company, is annulled, avoided, and reversed; and for said reasons, it is now ordered, adjudged, and decreed that plaintiff, Mrs. Jessie D. Frazier, do have and recover judgment against defendants, F. Strauss & Son, Incorporated, and Sun Indemnity Company, in solido, for $9,096.-30, with legal interest thereon from judicial demand herein, and for all costs. In all other respects, the judgment appealed from is affirmed.