### LEE v. COULON et al.

### BILLIOT et al. v. SAME.

### Nos. 16817, 16818.

Court of Appeal of Louisiana. Orleans.

April 4, 1938.

Porteous, Johnson & Humphrey and Julian Humphrey, all of New Orleans, for appellants.

Frank H. Langridge, of Gretna, for appellees.

WESTERFIELD, Judge.

These two cases, which were consolidated below for purpose of trial and in this court for purpose of argument, grow out of a collision between a truck and an automobile, which occurred near Barataria on the Lafitte road in the parish of Jefferson, on the 26th day of August, 1935, and which resulted in the killing of two young men, Rene Verret, the son of Mrs. Frederick Lee, and Anthony Billiot, the son of Mr. and Mrs. Ethine Billiot. The parents of both young men brought suit for approximately $10,000 each, against Victorin Coulon and Sidney Adams. Coulon was the owner, and Adams, his employee, the driver, of a 1½-ton Chevrolet truck which collided with an Essex sedan which was being towed by a truck owned and operated by one Dave Anderson. The young men who were killed were standing on the left running board of the Essex sedan, which was being towed from the direction of the town of Lafitte towards Gretna, La., while the Coulon truck was being driven in the opposite direction. The charges of negligence imputed to Adams, for which Coulon is also sought to be held responsible under the doctrine of respondeat superior, are excessive speed and lack of control of the truck which, it is claimed, "sideswiped the left side of the Essex sedan," on the running board of which the two young men were riding.

The defendants deny the charges of negligence imputed to the driver of the Coulon truck and aver that the accident was due entirely to the negligent operation of the Essex car by its owner, Louis Creppel, and that of Dave Anderson, the driver of the truck which was towing it, with the result that the Essex car suddenly swerved out from behind the Anderson truck and into the path of the Coulon truck.

There was judgment below dismissing both suits, and the plaintiffs have appealed.

There are two theories concerning the manner in which the accident happened. One, that advanced by the plaintiffs, to the effect that after the Coulon truck had passed the Anderson truck it veered suddenly towards the left and into the left side of the Essex car, upon the running board of which the two young men were riding, which would involve the responsibility of the defendants for the accident. Second, that put forward by the defense, to the effect that the Essex car, which was being towed by the Anderson truck, turned suddenly to its left and into the path of the Coulon truck, thus absolving the driver of the Coulon truck and placing the blame for the accident upon either Dave Anderson, the driver of the truck which was towing the Essex car, or upon Louis Creppel, who was guiding it.

The testimony of more than thirty witnesses makes up the large transcript of the evidence, but very few of these witnesses saw the accident. The Creppel car became disabled just a short distance from the scene of the accident. The Anderson truck offered to tow the Creppel car and attached a rope, said to be between eight and twenty feet long, to the rear axle of the truck and the front left spring of the Essex. There were six people inside the Essex car, the two boys standing on its running board and about fifteen people in the Anderson truck. Most of the occupants of the two vehicles were employees of a shrimp factory at Lafitte and were being driven to their homes. Several of the occupants of the Creppel car were asleep, and a number of those in the truck were looking in another direction at the time of the accident. The Lafitte roadway is covered with shells and is about twenty-three feet wide. There had been some rain and the roadway was not smooth, or, as some of the witnesses describe it, full of loose gravel. The speed of the Anderson truck was, we are convinced, quite moderate as might be expected under the circumstances, about fifteen miles per hour. The speed of the Coulon truck was about thirty-five miles per hour. The contact between the two vehicles was very slight and the boys who were killed appear to have been knocked off the car and thrown some distance into the roadway.

Some of the witnesses state that the Essex car was not entirely disabled during the time of its towage, and that the engine of the car, during a part of the time, was running causing the tow line to slacken; but this is, doubtful, and we are inclined to believe that the Essex car was helpless during the entire time.

The only eyewitnesses to the accident who testified on behalf of plaintiffs were Louis Creppel, the driver of the Essex sedan, and Mrs. Catherine Bach, an employee of the shrimp factory who was sitting on a bench in the rear of the Anderson truck. Creppel stated that his car was entirely disabled during all the time it was being towed and that he was on the extreme right-hand side of the road; that he had only been towed about a block, meaning, we suppose, a city block or about one hundred yards, when the accident occurred; that he did not see the Coulon truck because his view was obstructed by the Anderson truck; and that when the Coulon truck passed the Anderson truck it swerved over towards the Essex car and struck the two young men. Creppel estimates the speed of the Coulon truck at about forty-five miles per hour. His automobile was not damaged except for dents made in the left side by the boys' bodies when they were struck. Creppel also says that the truck did not come into contact with his automobile at all and proceeded on its way about two hundred feet after striking the boys before it came to a stop.

Mrs. Catherine Bach stated that she was looking in the direction of and watching the Creppel car; that the Coulon truck passed so close to the Anderson truck that it hit her arm, although in another part of her testimony she says that it almost hit her on the arm; that the Anderson truck and the Creppel car were both on the extreme right-hand side of the road and traveling very slowly; that the Coulon truck struck the Essex car with a loud impact causing the boys "to go flying in the air"; that the accident occurred after the Essex car had been towed about one-half mile. When asked whether the Essex car had, at any time during its towage, swayed over towards the center of the road, she replied, "I don't know if he did it then and there," and again, "No, I didn't pay that much attention to him. The only time I called attention was when I seen that truck coming so fast and where it was going to land at," and finally, that she could not say "because after we took it in tow, it was raining, sometimes and we had our heads covered up, and sometimes we did not."

The effect of the testimony of these two eyewitnesses is most confusing. Crep-

pel stated that his car was entirely helpless all during the time that it was being towed, and Mrs. Bach said that it was not; Creppel said that he was towed about one hundred yards when the accident happened, and Mrs. Bach that Creppel's car had been towed more than one-half mile; Creppel said that he had always been on the right-hand side of the road, and Mrs. Bach first testified in corroboration of this statement and subsequently that she did not know.

The other witnesses for plaintiffs testified as to the speed of the respective vehicles, the position of the boys on the running board and of their bodies after the accident, to the distance between the colliding vehicles after the impact, and to other matters of collateral interest, but give no light upon the direct cause of the accident because they did not see it.

The defendants produced Sidney Adams, the driver of the Coulon car, as their only eyewitness. He testified that he saw the Anderson truck when between three hundred and five hundred yards away, but that he did not see the Creppel car at all until he had passed the Anderson truck, when it darted out suddenly across his path; that he had been traveling about thirty-five miles per hour but had reduced his speed before reaching the Anderson truck to about twenty-five miles per hour.

Ben Stewart and Frank Williams, who were riding in the Anderson truck, testified for defendants to the effect that for some time prior to the accident the Essex car had been swaying from side to side behind the Anderson truck or "zigzagging," and that at times it crossed the center of the road.

Five or six members of the coroner's jury, who did not see the accident but who were present at the scene shortly afterwards, testified that they examined the roadway and traced the tracks of the Essex sedan and found them to be irregular and wavering, crossing the center of the roadway from time to time.

In Frazier v. F. Strauss & Son, 172 So. 385, 387, the Court of Appeal for the Second Circuit considered a case very similar to the one under consideration here. There a disabled Dodge truck, while being towed by a Chevrolet coupé, collided with a Chevrolet coach on the public highway, and the court held that the "circumstances strongly support plaintiff's theory of the truck's position on the road. Being some five feet from the coupé it was pos-

sible for it to swing back and forth across the middle line and especially would such motion be expected when rounding curves."

See, also, Hamilton v. F. Strauss & Son, La.App., 154 So. 489.

█ As we have heretofore stated, the left spring of the Essex sedan was fastened to the left axle of the Anderson truck by a tow rope, variously estimated as being from eight to twenty feet long. A tow line fastened in this fashion would be calculated to cause the towed vehicle to pursue an irregular course, as the force was applied to only one side of the towed vehicle. It seems to us, therefore, that the person guiding the Essex car would have to be constantly on the alert to prevent lateral movement, and while we recognize that perhaps the greatest tendency would be for the Essex car, under these circumstances, when departing from a straight course to move towards its right and away from the middle of the road, it may have been that while exerting an effort to overcome this tendency Creppel, the driver of the Essex, turned too far to the left and thereby placed himself in the path of the Coulon truck. We say it may have been because there is no evidence upon which we may base a conclusion of fact to that effect, however, it is certainly a more reasonable hypothesis than that advanced by the plaintiffs who, of course, bore the burden of proving that the accident happened in the manner alleged to involve legal responsibility of defendants. It does not seem plausible to us that the Coulon truck after having cleared the Anderson truck should depart from its course by turning sharply to the left and into the towed Essex. If it had maintained a straight course before reaching the point of collision and the Anderson truck and Creppel car had done likewise, the left sides of the two vehicles would have been parallel and that position would have been maintained until both vehicles had passed, since there was no contact between the two trucks. If that be true, then there would appear to be no reason for the driver of the Coulon truck to cut sharply to the left at an angle of thirty or forty degrees. It is not impossible, of course, but highly improbable. On the other hand, it is equally unlikely and unsupported by any evidence in the record that the Coulon truck could be moving diagonally across the twenty-three foot roadway so as to clear the Anderson truck and strike its tow. We are unable to say from the testimony in

this record how the accident actually occurred. All that we can say is that the plaintiffs have failed to prove their theory of the case so as to involve the defendants with responsibility for the consequences. The explanation of the unfortunate accident given by the defendants and their witnesses is the more plausible under the circumstances. This was evidently the conclusion reached by the learned trial judge, and we know of no reason to disturb his finding.

For the reasons assigned the judgment appealed from is affirmed.

Affirmed.