No. 814

First Circuit

———

HOLLOWAY v. THE PURE OIL CO.

———

(June 16, 1931.   Opinion and Decree.)
(October 7, 1931.   Rehearing Refused, Reasons   Attached.)

———

Robert R. Stone, of Lake Charles, attorney for plaintiff, appellee.

McCoy, Moss & King, of Lake Charles, attorneys for defendant, appellant.

MOUTON, J. Alvin street runs ·north and south through the city of Lake Charles; Ryan street east and west. Incline street enters Ryan street from the south a little east of the line where Alvin street intersects with Ryan street. Hence Incline street is to some extent a continuation of Alvin street to the south of Ryan street.

At about 8:30 o'clock on the night of January 7, 1930, a Ford car which plaintiff Holloway, was driving collided, at the intersection of the streets above named, with a load of drill pipes attached to a truck of defendant company driven . by Turner, one of its employees.

Plaintiff was severely injured by the collision and was given judgment for $3,000 against defendant company from which it appeals. Plaintiff is asking for an increase of $500, on the amount allowed.

Defendant denies any negligence whatsoever on its part, and also pleads contributory negligence.

In his opinion the district judge says:

"That defendant's action in permitting its truck to be stopped on the south side of Ryan street, with a nine inch load of pipe extending from the truck across Ryan street, into Alvin street, on a rather dark, rainy night, without lights or other signals on the pipe, and at a place · where the pipe was invisible except from a very short distance, therefrom, was the grossest sort of negligence, and unquestionably caused the accident."

The foregoing statement of the court, taken in connection with the plea of contributory negligence, presents the vital issue in the case.

The record shows that the total length from the bumper of the truck to the end of the pipes, at the time of the collision, was 56 feet. The width of Ryan street is 36 feet, and of Alvin street 35.10 feet.

Turner, driver of the truck, was driving southward in Alvin street, and says when he got to the point where that street intersects Ryan street he stopped to a standstill. He then observed, he testifies, a car coming on Ryan street from the east, then about a block away. At that time he says he started his truck again, driving slowly to go across Ryan street, and to make a safe turn as he was going eastward towards Welsh, his point of destination. His testimony is that the car coming from the west on Ryan street, and which the record shows was plaintiff's car, kept advancing or coming towards him without apparent check, and that he blew his horn, hollered, and that as he realized the car would run into the pipes, he "stopped the truck dead still," and says that the truck was not moving when plaintiff's car ran into it. In answer to a question as to whether the truck at that time was headed east, he said, "Not exactly." The proof is that, when the truck came to that dead stop, the end of the pipes was extended about 8 or 10 feet into Alvin street. This is easily accounted for by the fact that Ryan street is 36 feet wide, and the truck, with the trailer and pipes, was in all 56 feet long. As the end of the pipes was projected about 8 or 10 feet in Alvin street, necessarily there must have been a well-pronounced angle in the pipes that were connected to the truck by the tongue of the trailer. The proof shows, according to the witnesses for

defendant that the trailer and the pipes were at about 12 or 14 feet from the north-eastern corner of Alvin street; and, according to the evidence of plaintiff's witnesses, at about 10 or 12 feet from that corner. It is shown that the width of the trailer from outside to outside of wheels was 11 feet and 3½ inches. Accepting, for the purpose of this observation, that the trailer and the pipes were at the distance of 12 or 14 feet from the east edge of Alvin street, this fact shows that there must have been a considerable angle from the end of the truck, where the pipes were connected therewith, and the end of these pipes which were projecting beyond the trailer into Alvin street. The curve or angle of the pipes began, no doubt, from the back of the truck where they must necessarily have been connected with a bolt or coupling pin, thus giving flexibility to the movement of the pipes which were trailing behind.

The witnesses that testified on the subject say that there was an angle between the truck and the pipes, more or less acute in their opinion. The facts to which we have referred, showing the relative positions of the truck and the end of the pipes at the time, justify us to infer, independently of the testimony of these witnesses, that there was quite an angle or deflection between the end of the pipes and the truck, starting in close proximity to the back of the truck.

Turner says he had a spotlight on the back of the cab about 2 feet 6 inches above the pipes, and that this light was thrown on the entire load for the benefit of the driver and traffic. No doubt when the trailer and pipes were following the truck on a straight line the light was thrown along or over the load from the spotlight which was attached to the back of the cab. This was not, however, the situation existing at the time of the impact when the pipes were pointing in Alvin street in a northwesterly direction and the head of the truck was pointing eastward, if "not exactly" in that direction, as testified to by Turner. As the truck and the pipes were then situated, the rays of light from that spotlight were falling south or west of the pipes and beginning at an extremely short distance from where the trailer, with the pipes, was connected through a coupling pin or revolving bolt attached to the truck.

Subsection b, of section 44, Act No. 296 of 1928, page 647, reads as follows:

"The draw bar or other connection between any two vehicles, one of which is towing or drawing the other on a highway, shall not exceed fifteen feet in length from one vehicle to the other.

"Whenever such connection consists of a chain, rope or cable, there shall be displayed upon such connection a red flag or other signal or cloth not less than twelve inches both in length and width."

The connecting drawbar in this case between the truck and trailer was 21 feet long, and therefore over the 15 feet mentioned in the first paragraph of the subsection, above reproduced, but this fact is of no importance, as the length of the connection had nothing to do with the accident.

We must therefore direct our attention to the second paragraph of the subsection. Counsel for defendant call our attention to that part of the subsection which they say refers to the signals therein provided for where the connection between the two vehicles consists "of a chain, rope or cable." They contend that it is because of that character of a connection, so small in

size that it could hardly be seen or that it would be practically invisible, that the statute requires a display thereon of a red flag or other signal.

In this case, the pipes that were being carried, were 9 inches in thickness. The connection therefore did not consist of a "chain, rope or cable," and in size were much larger. Because of the difference in the size between the pipes, defendant was trailing and the size of a chain, rope, or cable, mentioned · in the statute, counsel say, that the defendant was not required to make the display of the signals, referred to in the statute. We do not think the law attaches so much importance to the size of the connection between the vehicles as it does to the ·question of easy detection or visibility.

The subsection says the signal on the connection consisting of a "rope, chain or cable," must be a red flag or other signal or cloth not less than 12 inches both in length and width. There was no such signal as a red flag or cloth on the pipes or connection between the trailer and truck in this case. We cannot say, and it is not shown if a cloth signal of the character mentioned would have afforded any protection at night when the collision occurred. The subsection, it will be noted, refers to the requirement of a red flag "or other signal" or cloth. The other signal, under the statute, evidently may be of another character. The evident purpose of the statute was therefore to require some signal displayed on the connection between the truck and trailer which would afford protection to travelers through the streets of our cities or highways of the state.

In the instant case, defendant was trailing pipes which were of a dark or brown-ish color, and, under the requirement of a flag or "other signal," referred to in the statute, defendant should have had a light on the pipes which formed the connection between the truck and trailer. The fact is that defendant company, in placing the spotlight back of the cab, was endeavoring to throw the light along and over the pipes it was carrying. That fixture failed to project its light, as intended when the turn was made in Ryan street towards the east, as hereinabove explained. It was the duty of defendant to so arrange its spotlight or other light that it would shine on the connection between the truck and trailer when it turned the corners of the streets or highways, thus creating an angle between the vehicles. In failing to so provide an effective signal, defendant company was guilty of gross and inexcusable negligence.

The next question is as to whether or not plaintiff was guilty of contributory negligence, because, if he himself was guilty of any fault which contributed proximately to the accident, regardless of the negligence of defendant, he cannot recover. This principle is immune from debate.

Plaintiff, when the accident happened, was traveling westward on Ryan street. He testifies when about 150 or 200 feet from the scene of the collision he was going at a speed of about 16 to 18 miles an hour. It was then that he saw the lights of what he took for an ordinary automobile, and which was crossing to the south side of Ryan street. In order to let the car pass, plaintiff says he slowed down to about 10 or 12 miles an hour, and for the first time saw the pipes when about 10 or 12 feet therefrom, and that it was too late then to stop.

Obviously, as he explains, he thought that it was an ordinary car that was cross-

ing Ryan street, and certainly he did not have the slightest reason to believe that it was a truck that was making the turn with a long string of pipes behind it. Naturally he kept his eye on this truck, thinking it was an auto, and slowed his car to allow it to pass him on the south side of Ryan street. When about 10 or 12 feet from the pipes, he looked through his windshield and saw, for the first time, the pipes in his pathway, but at a time too late to avoid the collision.

Testifying on this subject, plaintiff says:

"By that time I was looking through the windshield and seen there was something in front of me . looks like pipe, then I decided to turn; after deciding it was oil field pipe or some kind. I decided to turn into Alvin street, I found that way blocked and stepping on the brakes about the same time, the pipes were so close I didn't know what to do, etc."

. The weather at the time was cloudy or misty, as appears from a preponderance of the evidence. The pipes were dark and brownish in color, about 4 feet above the pavement, and could not be easily seen or were barely discernible under such conditions.

There was a street light of ordinary size at the southwest corner of Alvin and Ryan streets on the night of the accident, but the light it was giving did not make the load of pipes visible, as was found by the district judge.

The fact is that Dr. Holcombe came down Alvin street shortly after the collision, before the truck had been removed, and, on account of the poor visibility of that corner light, came near running into the load of pipes before he saw it. Plaintiff coming on Ryan street from the east was certainly not in a better position than

was Dr. Holcombe to see that load of pipes. He is not chargeable with lack of attention or ordinary care because he failed to see the pipes before getting at the distance when he says he saw them for the first time.

Counsel for defendant contend that the brakes on plaintiff's car were not in good condition; otherwise, by applying his brakes, as he claims he did, that he should have stopped his auto before running into the pipes.

Plaintiff swears that his brakes were effective, and says a week before the accident he had had brake linings put on. He says Mr. Fisher from New Orleans had tested the brakes, and, from the description given by him of the test, his brakes were not defective. Mr. Fisher was representing at the time the surety company that held the risk on the Pure Oil Company's trucks. He came to make an investigation as to whether this claim should be paid. From his testimony, it would seem that he made no examination of the brakes on plaintiff's car. Other evidence was also given in reference to the brakes on plaintiff's car at the time of the accident. The lower court was inclined to believe that his brakes were in good condition at the time, and we find no reason to think otherwise.

The lower court, though of the opinion that the brakes were in good condition, said that whether they were or not was of no consequence in the case, as plaintiff did not see, and could not have seen, the pipes in time to stop his car so as to avert the accident.

In his testimony, plaintiff says that, when he realized that oil pipes were in his way, he decided to turn into Alvin street

but found that the way there was blocked, and then says, "and stepping on the brakes about the same time, the pipes were so close I didn't know what to do."

When he first saw the pipes, it must be remembered, he was then at 10 or 12 feet from them. The pipes were so close, evidently he did not know what to do, as he testifies, and about that time he stepped on the brakes. He had then unquestionably moved on from the 10 or 12 feet when he first saw the pipes and when he applied the brakes, even if they were in good condition, it was then too late to keep his car from running into the pipes. The question in reference to the condition of the brakes was therefore of no importance in the solution of the issue.

Counsel for defendant company contend that plaintiff, after seeing the pipes, was at fault because he did not turn to his right and pass between the trailer, the end of the pipes, and the northeastern corner of Alvin street.

Mr. Young, who was trying to rush plaintiff to the hospital, says there was no room to pass his auto between the trailer, pipes, and the corner of that street, and that he had gone around the block. Mrs. Young, Mr. Faukes, and Mrs. Nellie Carter, who were at the scene soon after the accident, all testify that there was not, in their opinion, enough room for the passage of an auto at the time between that corner and the pipes.

It was shown that an ambulance, which came up after plaintiff had gone to the hospital, passed safely between trailer, pipes, and corner of that street. Hence defendant contends that plaintiff could have passed there safely and was at fault because he did not.

As before explained, this trailer and pipes across Ryan street, with the end of the pipes extending into Alvin street, had placed plaintiff in a perilous position when he attempted to cross Ryan street. Plaintiff was therefore confronted with a sudden and unexpected peril when he came in close proximity to this trailer and pipes. There were two hazards which suddenly presented themselves, and which were created by the fault of defendant's employee. Plaintiff, in order to avoid injury or disaster, had to choose between the two hazards by either applying his brakes or to turn to his right and attempt to pass between the trailer, pipes, and the corner of Alvin street. In such a situation a person is not expected to exercise his full judgment and his reasoning faculties. If he exercises, as we had occasion to say in Pope v. Locascio, 13 La. App. 304, 126 So. 727, 729, "the care and caution in an emergency (of that character) which an ordinary prudent person would have exercised under similar circumstances, he is not negligent because he fails to exercise the best judgment." Navailles v. Dielmann, 124 La. 421, 50 So. 449, 134 Am. St. Rep. 508; Weinfield v. Yellow Cab Co., 10 La. App. 316, 120 So. 420.

If one, under such circumstances, is compelled to choose instantly between two hazards, he will not be guilty of contributory negligence, although the one he selects results in injury, as was stated by us in that case.

In the instant case, if plaintiff made an error in stepping on the gas instead of attempting to go by Alvin street when confronted with the peril ahead of him, he cannot be charged with contributory negligence.

Plaintiff received injuries of a very serious character, and which to a certain extent will affect him in the future. It is unnecessary for us to describe the injuries he suffered for which the court gave him damages for $3,000, which we find to be a fair and just allowance, calling neither for an increase or decrease.

---

## ON APPLICATION FOR REHEARING

MOUTON, J. In this case we are favored by a written opinion of the trial judge which passes on all the questions of law and fact presented by counsel.

In the course of the opinion, the court took occasion to say as follows:

"Counsel for both sides requested the Court to view the scene of the accident at night, and to test the visibility of a truck load of pipe of identically the same kind and dimensions as that which was in the collision, and this was done. Frankly, before the demonstration, I was of the opinion, notwithstanding the testimony referred to in the preceding paragraph, that the plaintiff should have seen the pipe in time to stop. The demonstration convinced me, however, that because of the poor visibility of the pipe, any ordinary person would likely drive into it as did the plaintiff on the night of the accident."

The scene of the accident was not reenacted for our benefit, but, after a most careful study of this record, we are unable to find any error in the conclusion of fact reached below on this, the most vital issue in the case, as expressed in the foregoing quotation.

In our original opinion, we said it was shown that the trailer and pipes were across Ryan street with the end of the pipes extending into Alvin street, which had placed plaintiff in a perilous position when he attempted to cross Ryan street.

Continuing, we said:

"Plaintiff was therefore confronted with a sudden and unexpected peril when he came in close proximity to this trailer and pipes. There were two hazards which suddenly presented themselves, and which were created by the fault of defendant's employee. Plaintiff, in order to avoid injury or disaster, had to choose between the two hazards by either applying his brakes or to turn to his right and attempt to pass between the trailer, pipes, and the corner of Alvin street. * * * If one, under such circumstances, is compelled to choose instantly between two hazards, he will not be guilty of contributory negligence, although the one he selects results in injury."

Counsel for applicant says:

"We believe we are correct in assuming that the Court did not intend to say that the plaintiff was confronted with two hazards."

In 45 Cyc. 963 et al., cited in Weinfield v. Yellow Cab Company, Inc., 10 La. App. page 316, 120 So. 420, 422, body of decision, we find the following:

"So also where by the negligence of another, one is compelled to choose instantly between two hazards he will not be guilty of contributory negligence, although the one he selects results in injury and he might have escaped had he chosen the other, or had he done nothing at all."

The language used in our opinion, on this subject, is almost identical with the words reproduced from the foregoing excerpt. If there be any inaccuracy in the language employed by us, credit for it must be given to the above excerpt from Cyc., almost literally followed in our original opinion. The only difference existing between what we said and what is stated in that excerpt is, that when a party is placed in such a perilous situation by the negligence of another, in the event that

he has "done nothing at all," he cannot be held for contributory negligence. In the instant case, plaintiff took a chance by stepping on the brake to stop his auto but without avail. It cannot be held that he was at fault, and could not have been so held, even if he had "done nothing at all." If plaintiff made a mistake in stepping on the brake instead of attempting to go around the pipes by Alvin street, and failed to exercise the "best judgment," under the circumstances, he cannot, as was originally stated by us, be held to have been at fault or negligent.

In this case the truck and trailer were connected by pipes nine inches in thickness, which, as explained in our original opinion, were brownish in color, and were invisible at the time of the accident to plaintiff, situated as he was.

Counsel, in discussing this subject, says the statute referred to (Act No. 296, of 1928, sec. 44 (b)), reads as follows:

"Whenever such connection consists of a chain, rope or cable, there shall be displayed upon such connection a red flag or other signal or cloth not less than twelve inches both in length and width."

As the connection in the instant case did not consist of a chain, rope, or cable, counsel contends that defendant company was not required to have a signal on the pipes. The record shows that defendant had placed a light at the rear of the cab, and counsel argues very strenuously that it streamed along the pipes, which should have been seen by plaintiff in time to avert the accident. We found, as stated in our original opinion, that the light back of the cab fell south or west of the pipes, and which were not visible to plaintiff. In the application for the rehearing, counsel now contends that the use of the light at the rear of the cab was not required by the statute.

This argument leads to the conclusion that in this case, if defendant's cab had been connected with the trailer by only one pipe, however small in size, and although of color, black, no signal or light would have been necessary on that pipe for protection to the traveling public, because not specifically required under the provisions of the statute. One pipe of the color stated between two vehicles at night would be practically invisible under almost all conditions, without a light placed on it. Without such a signal at night, traveling over the streets of a city of the size of Lake Charles, where there is constant traffic, would be in total disregard of the dictates of common prudence and ordinary care. A party so traveling would be guilty of the grossest negligence.

Although the statute does not specifically provide that a light or signal be used where a pipe or link of such character connects two vehicles, it is demanded by the general rules of law for protection against palpable and inexcusable negligence. Here, it is true, the cab and trailer were linked, not by one pipe, color, black, referred to above merely for illustration, but were connected by several pipes. They were brownish in color, but were, however, not visible to plaintiff before he ran into them, and in time to avoid the collision. The danger lurked in their invisibility, and, though there were several pipes, a light should have been placed on them or used in such a way that they might have been visible to those traveling on the streets in autos or similar vehicles. The light being behind the cab afforded no such protection, the defendant was at fault, guilty of gross and inexcusable negligence, for which it was properly held in damages.