**BUTLER et al. v. MISSISSIPPI FOUNDA-TION CO., Inc., et al.**

**No. 5450.**

Court of Appeal of Louisiana. Second Circuit.

June 1, 1937.

Rehearing Denied June 30, 1937.

Hawthorn, Stafford & Pitts, of Alexandria, for appellants.

Polk & Robinson, of Alexandria, and Alvin R. Christovich, of New Orleans, for appellees.

TALIAFERRO, Judge.

In this case we are favored with a well-considered, written opinion of the trial judge in which the pleadings and issues are correctly summarized. His fact findings are admitted by appellants to be in keeping with the evidence in the case, and for this reason, among others, we quote with approval the said opinion:

"This suit for damages claimed for personal injuries and damages to property growing out of plaintiff driving his wife's automobile into the rear end of some timbers being transported by defendant's truck, with trailer attached. Plaintiff alleges that the accident and resultant injuries to himself and damages to his wife's automobile were due to the negligence of the driver of defendant's truck and trailer and the other agents and employees of defendant accompanying the driver and assisting in the transportation of said timbers. It is alleged that said negligent acts of said agents and employees constituted the sole proximate cause of the injuries and damages complained of.

"Defendant plead general denial and alleged contributory negligence on the part of plaintiff, M. A. Butler, driver of the automobile, in bar of plaintiff's right to recover, which contributory negligence, it is alleged, is imputed to Mrs. M. A. Butler, owner of the automobile being driven by her husband.

"The Fidelity & Casualty Company of New York, with which the Mississippi Foundation Company, Incorporated, carried liability insurance, was made party defendant. Both defendants joined in the answer.

"Plaintiff, M. A. Butler, has sued to recover $175.60, as medical and hospital expenses; $2500.00 for loss of earnings from his business; $1000.00 for pain and suffering; and $2500.00 for disability resulting from his injuries. His wife, Mrs. M. A. Butler, sues to recover $195.46 for cost of repairs to her automobile and $100.00 additional for its depreciation in value.

"The collision occurred at about 7 P. M., April 21, 1936, in the north portion of the town of Pineville, along the route as it passes through said town. The town lights were on at the time, as were the lights in connection with two filling stations located near the scene. The weather was cloudy, accompanied by mist and drizzling rain.

"The truck and trailer in question were being used at the time to transport two unusually large and lengthy pieces of timbers from a distance of some 100 or more miles south of Alexandria over the Jefferson Highway through Alexandria and Pineville for delivery and use in certain construction work between Pineville and Colfax. The timbers were about 55 feet in length by about 14 inches in diameter. They were resting on the rear part of the truck, extending back over the entire trailer, with about 8 feet of the ends protruding backward beyond the trailer's rear end. Due to the extraordinary hazard of this unusual load, a special permit was required from the highway traffic authorities to travel over the State highway with this load, which permit was obtained, same permitting travel during daylight hours only.

"Those driving and in charge of the load of timbers, composing the driver and two other men, started early in the day on the said 21st day of April, 1936, intending to traverse the whole distance in one day. However, night overtook them at or about the time they reached Alexandria. They did not stop for the night before reaching Alexandria nor did they stop within said city, but passed on through and through Pineville to its northern portion, where they drove the truck off the highway near a filling station and came to a stop with the trailer off the highway, except that its left wheel was still on said highway and the rear ends of said timbers protruding still farther backward behind the trailer and out over a portion of the highway. The object in stopping was to secure the proper flares and signals and then proceed farther on up the highway until they could find some suitable place to park for the night. The truck itself was equipped with front and rear lights, but the trailer had none except that it had at the rear what is called a reflector, which appears to have been a colored glass and when shone upon by the lights of another car from the rear, would be reflected and be visible to anyone in line with its rays if and when so reflected.

"From the testimony of the men in charge of the truck and trailer, one of them, J. W. Spence, Jr., took his position on the ridge pole of the trailer as they passed through Alexandria and directed the traffic to prevent any accident; and that in the same manner they proceeded through Pineville until they had reached a short distance from where they stopped and where the collision took place; then he went up to the cab of the truck to discuss with the driver the matter of stopping to secure lights and flares. He had for the time being relaxed his vigilance in watching the trailer and timbers, was not looking backward, and did not see Mr. Butler run into the ends of the timbers.

"Mr. Spence, Sr., another one of the three men in charge of the truck and trailer, according to his testimony, was on the rear end of the timbers for the purpose of warning people against accidents as the truck approached the place where it stopped, and as the truck came to a stop, he alighted and was standing in the road along by the side of the trailer and looking northward toward the front at the time Mr. Butler drove up and struck the timbers, not looking backward and not seeing Mr. Butler. Thus it appears that neither of

these men whose duty it was to keep a lookout for traffic approaching from the rear was doing so at the time Mr. Butler approached. This, in the opinion of the court, constituted gross negligence, especially under the circumstances. The rear left wheel or wheels of the trailer, as it came to a stop, extended fully 18 inches out into the line of traffic in the highway, and the timbers protruded a few inches still farther into or over the highway. It was drizzling rain and, no doubt, the mist added to the darkness of the night. It was after nightfall when they were forbidden, under their special permit, to travel or be upon the highway at any place.

"Defendants contend they should be relieved from negligence in this respect because of the fact that the whole area covering the highway and that off the highway where the truck came to a stop was well lighted by the Town's street lights, as well as the lights in the filling station near by, sufficiently for motorists to see and observe the truck and trailer, also the protruding timbers, and thus avoid running into them; that the ends of the timbers were 14 inches in diameter and were suspended above the ground so as to be about in line with the direct line of the headlights of an automobile, enabling the driver to see not only the ends of the timbers, but also see the very large rear end of the trailer, if the motorist was keeping a reasonably careful lookout ahead as he should under the rules of the road when driving.

"This brings us to a consideration of Mr. Butler's actions leading up to the accident. He testified that it was a dark, cloudy night and drizzling rain; that he was driving at 20 or 25 miles per hour, within the line of traffic, keeping a lookout for traffic, but did not see the timbers. On cross-examination, he stated that he did not see the trailer nor the truck, nor did he notice any lights. In fact, according to his testimony, he did not see anything or notice anything after passing under the railroad overpass some distance back from where he ran into the timbers. Such an admission appears most remarkable, under the circumstances. The roadway and space between it and the filling station were, according to the photographs in evidence, fairly well visible. It is true that it was a misty, drizzling night, but Mr. Butler was aware of these conditions. It does seem that he should have seen the truck and trailer, especially the rear end of the trailer, if he had been keeping a

reasonably careful lookout. Under the law he is presumed to see that which he should have seen. It is evident to the court that Mr. Butler must not have been keeping a proper lookout. Raziano v. Trauth, 15 La.App. 650, 131 So. 212; Kelly v. Schmidt & Zeigler, 142 La. 91, 76 So. 250; Sexton v. Stiles, 15 La.App. 148, 130 So. 821.

"And many other decisions cited by the defense counsel in brief holding similarly. The plaintiff's contributory negligence therefore must serve to defeat recovery, and plaintiff's demands will be rejected, with costs.

"R. C. Culpepper, Judge."

■■ The rules of law which the lower court invoked to deny recovery to plaintiff are not only buttressed by the cases mentioned by it, but also by scores of others. They are that, for the purposes of a plea of contributory negligence interposed to defeat recovery by an injured motorist, he is presumed, and in law held to see, that which by the exercise of ordinary vigilance he could have seen; and is required to maintain such a lookout ahead and such physical control over the operation of his vehicle that it may be stopped at all times within the distance illuminated by its headlights. These rules find fitting application to the facts of the present case. No good reason is advanced by plaintiff why he did not observe the rear end of this parked trailer, with the heavy timbers thereon, for scores of feet before running into it, and less reason is shown for not having observed the elevated red light attached to the back side of the cab of the truck. Plaintiff's evident gross inattention may only be ascribed for his failure to see that which could easily have been seen. This conclusion finds support in the experience of the witness Tischler, who preceded plaintiff a minute or two up the road. As he approached the rear end of the trailer, another car with bright lights was meeting him. He was momentarily blinded, but as the car passed his, the end of the trailer loomed up and was recognized in time for him to make a swerve to his left and avoid a collision. This indicates quite strongly that the light drizzle of rain did not materially interfere with the ability of the headlights to properly function.

But, argue plaintiff's counsel, and correctly so, there are exceptions to these well settled rules; they are not inflexible, and it is insisted that the facts of this case make

an exception of it. They cite and rely upon the following cases to sustain this contention: Kirk v. United Gas Public Service Co., 185 La. 580, 170 So. 1, 3; Holcomb v. Perry, 19 La.App. 11, 138 So. 692; Holloway v. Pure Oil Company, 17 La.App. 584, 135 So. 381, 136 So. 748.

The facts of the Kirk Case are briefly these: Defendant's employee, while operating its car in the performance of his duties, ran over and killed a yearling on the public road. The dead animal was left where killed. Plaintiff's son, driving his car, not observing the dead animal, ran over it and caused damage to the automobile. The district court allowed recovery for the damages to the car. Its judgment was reversed by the Court of Appeal, First Circuit (165 So. 735), and the Supreme Court on review reversed the Court of Appeal and held that the district court was correct and affirmed its judgment. The following description of the dead animal and physical conditions of the road about it clearly differentiate that case from the present one:

"The evidence shows, as we have hereinabove stated, that there were splotches on the paved portion of the highway in the vicinity of and at the spot where the body of the dead yearling was negligently left by the driver of defendant's automobile. The animal was dark in color and small in size. Those facts, taken together, with the surrounding physical conditions, made it difficult, almost impossible, for the driver of plaintiff's automobile to see the dead animal until it was too late to stop the car and avoid striking the body, which was not one of the usual obstructions a motorist is required to anticipate and avoid. In these circumstances, we think it would be unreasonable to hold that the driver of plaintiff's automobile was negligent in failing to see the body of the dead yearling sooner than he did."

The facts of the Holcomb Case, as found by the court, are these: Defendant's truck was stationed in the center of the 28-foot highway. Skid poles from the truck to the ground blocked one side of the road, while a team of horses employed to pull other poles up the skid poles and on to the truck, practically blocked the other side of the highway. The three—the team, truck, and skid poles—formed a barrier to traffic and, in addition, long poles extended over the rear end of the truck's flat body. It was night and no guards

were used to warn traffic of these conditions and no rear lights were burning to inform them of the truck's presence in the center of the highway. Plaintiff was following another car 40 or 50 yards. Both were going at reasonable speed. The driver of the advance car, suddenly confronted with an emergency, elected to run over the skid poles, with slight injury to himself and car. Plaintiff, resolving hastily, drove his car to the left of the truck. The ends of the protruding poles caught the car, inflicting material damage to it and plaintiff. Recovery was allowed under these facts and, we think, properly so. It was an aggravated case of gross negligence on the part of the truck owner's agents; and plaintiff's negligence, if any, was not the proximate cause of the collision.

The facts of the Holloway Case are easily distinguished from those of the case at bar. There, the defendant's truck was pulling a trailer, loaded with iron pipe, extending 8 or 10 feet beyond the trailer gate. From the front bumper to the rear end of the pipe was 56 feet. While making a left turn from Alvin street, 35.10 feet wide, into Ryan street, 36 feet wide, the pipe was collided with by plaintiff's Ford car, going westerly. The truck and trailer were diagonaling the intersection and there remained a narrow lane on their left side for traffic from the east to pass. The trailer, due to flexible coupling to the truck, in making the turn did not precisely follow the truck's tracks. The trailer and pipe extended at a slight angle from the truck's left side, to an extent encroaching upon the space open to westbound traffic on Ryan street. It was nighttime and a slow rain was falling. The pipe could only be seen by a motorist when very close to it. Under these facts and circumstances, the court properly held that plaintiff was not contributorily negligent in running his car into the extended ends of the pipe.

The lower court in its reasons for judgment did not discuss the demands of Mrs. Butler for damages to the car, the ownership of which is asserted by her. Mr. Butler testified he bought and paid for the car and gave it to his wife. Mrs. Butler did not testify in the case. She used the car generally for pleasure, while he used another one owned by them. It is not contended that the title of the car was vested in the wife by formal act of donation. Pertinent to this question, the Supreme Court in Kirkpatrick v. Finney & Byrnes et al., 30 La.Ann. 223, 224, 225, said:

"A mere purchase with intention to donate, or the declaration of such intention is not enough; that intention must be carried out in some one of the modes prescribed by law. The general rule is the execution of a formal notarial act, C.C. [arts.] 1536, 1538, the only exception to which in regard to property susceptible of it is the *actual manual delivery*. Neither are proved in this case. Had there in fact been such real manual delivery the plaintiff might have proved it by her own testimony at least, if not by that of other witnesses. The fact that she has not done so, nor even attempted to do so, by no means strengthens her pretensions in this respect."

Obviously, the car was an asset of the community when damaged and was being returned to the home by the husband after finishing a mission in the interest of the community. It was hers in the sense that it was regularly at her disposal and she had a preference right to its use. However, Mr. Butler also used it at times. Being a community asset and having been damaged while operated by and because of the negligence of the head of the community on returning from attending to community business, no recovery may be had for the injuries done it. The husband as head and master of the community alone is vested with the right to sue for damages to community property. Munch v. Central Laundry Company, 2 La.App. 123, and cases therein cited.

For the reasons herein assigned, the judgment appealed from is affirmed, with costs.