This is a damage suit wherein plaintiff seeks judgment against the Holicer Gas Company, Incorporated, and the carrier of its public liability insurance, the Hartford Accident and Indemnity Company, for physical injuries sustained by him and for the value of his automobile destroyed in a collision between it and a trailer owned by the gas company; also for loss of time from business, due to the collision. The *Page 870 
accident occurred a few minutes after midnight of March 16, 1944, on Highway No. 80, between the cities of Shreveport and Minden, Louisiana, a few miles west of the Louisiana Ordnance Plant.
The facts of the case are largely removed from dispute.
Defendant is engaged in retailing butane gas, which it transports in tanks affixed to trailers drawn by motor trucks. Plaintiff, at the time of the accident, was working in said Ordnance Plant. His shift went off duty at midnight. He immediately repaired to his automobile and after picking up five other workmen, started to Shreveport where all lived.
Defendant's trailer was loaded with three thousand (3,000) gallons of gas. It had left Shreveport and was destined for Minden. The driver was not well acquainted with the highway to Minden and when a few miles west of the Ordnance Plant, decided he was on the wrong road. He continued easterly until he came to a place he thought was sufficiently wide to admit turning the truck and trailer around. At this place the main highway is intersected by a narrow unimproved road. The driver decided to make the turn by backing the trailer northerly into the intersecting road and then drive the truck gradually westerly. There was no traffic in sight in either direction. After backing a short distance he stopped the motor, got out and inspected the locus. To aid him in guiding the backward movement of the trailer, he placed an empty tin box on his left side of the road and then got back into the truck. He had backed only a few feet more when he observed the lights of plaintiff's car coming toward him over a rise in the road approximately 4 of a mile away. At that time his truck was facing easterly on the south side of the highway and the trailer was diagonally across the road, traversing entirely the north half of the concrete portion thereof. The driver then undertook to clear plaintiff's side of the road by driving forward, but became excited and killed the motor. He tried but failed to again start it. While in the position above described, plaintiff's car ran into the side of the trailer, causing the damages for which sued.
Plaintiff's action is buttressed upon the following acts of negligence of the gas company's driver, to-wit:
That the truck and trailer, parked crosswise the highway, effectually blocked traffic thereon; that the trailer was without lights to apprise motorists of its presence and location; that flares were not placed on the road as required by law; that the lights of the truck were very bright and were not dimmed by the driver as plaintiff approached him, although he was signalled several times to do so. Plaintiff affirms absence of any negligence on his part as a cause or a contributory cause of the accident.
Defendants deny that the driver was to any extent negligent in the handling and operation of the truck and trailer, and aver that at the time and place he sought to turn them he had the right to do so; that the vehicles were not parked within legal contemplation, but were momentarily stalled, and, therefore, there rested on him no duty, legal or otherwise, to place flares on the road. They pleaded, in the alternative, that plaintiff's own contributory negligence bars recovery by him, such negligence consisting of the following elements:
That he was driving in the night time without having the lights on his car so adjusted as to be able to see at least two hundred (200) feet ahead of him; that he failed to have his car under such control that it was possible to stop it when he saw or should have seen the trailer blocking his side of the highway; that he did not maintain a careful lookout for objects in front of him which were disclosed by his headlights; that he did not stop his car or slow it down as he approached the truck after observing its presence on the road. Further, in the alternative, defendants plead that plaintiff had the last clear chance to avoid the accident.
Plaintiff was awarded damages for pain and suffering, loss of business and loss of time from work, in the sum of Seven Hundred Eighty-Six ($786) Dollars, and for Nine Hundred Seventy-Five ($975) Dollars, the value of his automobile, less salvage. Defendants prosecute appeal from this judgment. Answering the appeal, appellee prays for increase in the judgment to the extent of One Thousand ($1,000) Dollars.
When plaintiff first observed the truck's lights, then over seven hundred (700) yards therefrom, he was traveling at thirty-five (35) miles per hour. He released the gas feed and his speed fell to from twenty-five (25) to thirty (30) miles per hour. His testimony that he put on the dimmers several times before the collision, and that *Page 871 
the driver of the truck did not respond by doing likewise, is corroborated by a passenger riding on the front seat with him. The truck driver testified that he did dim his lights after seeing those of plaintiff, but in this he is probably in error since he became so excited that he killed his motor and could not again start it, notwithstanding it was in first class running condition.
Plaintiff also testified and again he is corroborated by one of the passengers, that notwithstanding the truck's lights were very bright, and were not dimmed, his own lights enabled him to observe conditions on the road to the truck, but not beyond. He also testified that he believed all the while that the truck was moving toward him. Neither he nor any of the passengers who testified saw the trailer until the front end of the truck had been passed. It was then too late to avert the collision, although there was room enough for the car to pass on the shoulder at the trailer's rear end.
[1, 2] That the driver of the truck was grossly negligent in attempting to turn it and the trailer at the time and place mentioned, it seems to us, is not open to debate. It is certain that to effect a complete reversal in the position of the vehicles on the highway enough time was required to allow motor vehicles several miles away, traveling at legal rates of speed, to reach the scene before the turn could be completed.
The place where the turn was attempted is not far west of the Ordnance Plant. A large number of persons worked there; in fact, work is continuous, requiring three eight hour shifts. Many of these workmen, probably a large majority of them, go to and from the Plant in automobiles. Traffic on the highway, for this and other reasons, is heavy night and day. This is reflected from the fact that several cars passed the scene of the accident immediately following the collision, and the hour was past midnight. And, it is equally true, that the driver's negligence was active down to the time of the collision. His status was not the same as would be that of a motorist who had parked his car on his proper side of the highway at night and left it there. Under the circumstances the absence of flares on each side of the trailer does not amount to negligence.
In view of the foregoing conclusions it is necessary to determine if plaintiff negligently operated his car from the time he saw the head lights of the truck to the moment of the collision; and if he was negligent in not seeing the trailer in time to avoid colliding with it; and, if so, was such negligence the or a proximate cause of the accident?
[3] Defendants urge and rely upon the doctrine, well established in our jurisprudence, that, as a rule, a motorist whose ability to see down the highway is materially obscured by rain, mist, dust, smoke, etc., or by the lights of approaching car or cars, should reduce his rate of speed to such extent and bring his car under such control as will enable him to stop it within the distance illumined by the headlights. Numerous cases are cited in which this principle is announced and applied, but in none of them are the facts identical, or nearly so, with those of the present case.
[4] However, the courts in many cases have made it clear that this drastic rule admits of exceptions; that no hard and fast rule can be safely laid down to govern each case, and, in the final analysis, the facts of each case will determine the question of negligence. The last case on this question decided by the Supreme Court is that of Gaiennie v. Cooperative Produce Company, Inc., et al., 196 La. 417, 199 So. 377, 379. In that case dazzling lights of on-coming cars prevented the plaintiff from seeing a truck parked at an angle on his side of the highway in time to avert colliding with it. The court held that in view of all the facts and circumstances, the motorist was not negligent in running into the parked truck when traveling at a speed of from twenty (20) to twenty-five (25) per hour. In passing, the court said:
"In Kirk v. United Gas Public Service Co., 185 La. 580,170 So. 1, this court stated that the general rule is not inflexible, and that its application depends on the facts and circumstances of each case. Many cases were cited therein where the rule was relaxed and the driver of the automobile exonerated from negligence.
"Many cases have held to the effect that ordinarily a motorist is negligent in not slowing down to a speed at which he can stop instantly when blinded by headlights. However, a careful examination will reveal that the circumstances and facts of each case were taken into consideration in arriving at a conclusion. Also, it has been held in many cases that a motorist was guilty of negligence because he failed to see the obstruction or object in time to stop before colliding with it; but, the facts *Page 872 
and circumstances of each case have been considered in determining whether or not the motorist had sufficient reasons for not seeing the object or obstruction in time to stop."
See also: Woodley Collins v. Schusters Wholesale Produce Company, Inc., 170 La, 527, 128 So. 469; Louisiana Power 
Light Co. v. Saia et al., La. App., 173 So. 537; Jacobs v. Jacobs, 141 La. 272, 74 So. 992, L.R.A.1917F, 253.
In Hogue v. Akin Truck Line et al., 16 So.2d 366, 367, this court considered and sustained exceptions of no cause and no right of action, and, in doing so, applied the general rule as stated above. The facts of the case, related in the petition, in our opinion, clearly brought it within the announced rule. We said however, in course of the opinion, to-wit:
"In all of these cases the court emphasized the oft made statement that no hard and fast rule could be laid down to govern cases of the kind; that each case must be determined solely from its own peculiar facts."
The facts of the case of Webb v. Dunn et al., 15 So.2d 129, decided by this court, are to a substantial extent similar to those of the present case. There the driver of a truck (to which was attached a trailer) attempted to start the motor by backing down a decline in the highway. The trailer jack-knifed and blocked traffic on the road. The plaintiff, operating an automobile, failed to see the truck and trailer across the road in time to avoid running into the latter. Another automobile on the scene at the time played some part in the accident. However, it seems clear that even had this other car not been present it would have been held that due to the exceptional and unusual facts of the case, it fell without the rule generally applicable to collisions in the night time.
The facts in the following cases, it was held, make them exceptions to the discussed rule; in each case plaintiff's car, in the night time, collided with another vehicle or other stationary object on the highway, and in each recovery was allowed: Stafford v. Nelson Bros., 15 La. App. 51, 130 So. 234; Hanno v. Motor Freight Lines, Inc., 17 La. App. 62, 134 So. 317; Holcomb v. Perry, 19 La. App. 11, 138 So. 692; Frazier v. F. Strauss Son, Inc., et al., La. App., 172 So. 385; Williams v. Campbell et al., La. App., 185 So. 683; Warnick et al. v. La. App., Highway Commission, La. App., 4 So.2d 607; Holloway v. Pure Oil Company, 17 La. App. 584, 135 So. 381, 136 So. 748.
[5] In the present case, plaintiff was able to observe conditions on the highway between his car and the front end of the truck, although its driver did not dim the headlights as was his duty. Plaintiff honestly thought the truck was coming toward him and, therefore, was covering ground that his own lights revealed to be free of any obstruction to traffic. Acting upon this belief he felt safe in driving forward at a speed not exceeding thirty miles per hour. The trailer being beyond the truck's front end, its presence was not revealed to plaintiff until he was within a few yards of it.
[6, 7] It is common knowledge to all who operate motor vehicles at night that the headlights of such vehicles will not reveal objects on the highway beyond the locus of an on-coming vehicle that also has bright headlights. Of course, plaintiff or anyone in his situation, would not be expected or required to reduce the speed of his car to such extent that it could be stopped within the short distance between him and the trailer after its presence on the highway was discovered. To have effectively guarded against the emergency that did confront him, he would have had to proceed at snail-like pace or have brought his car to a complete stop. The law does not exact this of a motorist under such circumstances. He did not and surely would not be expected to anticipate that the road, especially so near the Ordnance Plant, at the midnight hour, would be blocked as it was.
[8] It is urged that the trailer was well equipped with lights on each side and, in addition, there were also reflectors on each side of it; that these lights and those of the truck were on the same system, and when one was on all were on; that plaintiff should seen the lights and reflector within a distance he could have stopped his car before colliding with the trailer. The driver testified that the lights of the trailer were burning prior to and when the collision occurred. Plaintiff and one of his guests are equally positive the trailer lights were not burning at time of the collision. No one testified that the lights on the trailer were burning after the collision.
It is seven feet eight inches (7' 8") from the ground to the top of the tank on the trailer. The tank is of aluminum color *Page 873 
and not easy to recognize in the night time even with the aid of bright lights. The trailer and tank were at an angle to plaintiff. It is entirely conceivable that plaintiff's lights when dimmed cast their beams below those on the trailer if they were burning.
We do not know whether the lights on the trailer were burning when the accident occurred. The preponderance of the testimony is against the contention that they were. Anyway, had plaintiff seen the lights and/or the reflector, surely he would not have heedlessly driven his car toward and beyond the truck. We believe he was keeping a lookout down the highway from the time he saw the truck lights until he passed them. It is reasonable to assume that he would have seen the lights on the trailer if burning, unless, as said before, the beams of his own headlights focused below them.
[9] The established facts of this case do not substantiate the charge of contributory negligence leveled against the plaintiff. Even though it be conceded arguendo that he did not exercise the same degree of care others would have exercised under existing circumstances, it cannot be said that such lack of care was the or a proximate cause of the collision. The truck driver's original negligence did not at any time abate; it was active and unbroken to the moment of the collision and his negligence, in our opinion constitutes the proximate cause of the accident.
The facts of the case make inapplicable the last clear chance rule urged by defendants.
[10] The extent of damage to plaintiff's car is admitted. Defendants do not challenge the correctness of the amount of damages in other respects as fixed by the trial judge, but plaintiff prays for increase in the amount (Five Hundred [$500] Dollars) allowed him for pain, suffering and shock.
Plaintiff was thrown against the steering wheel of his car violently, was momentarily dazed and received shallow contusions about the face and knees and a deeper one on the chest, the latter causing considerable pain, which persisted, more or less, for about a month. Immediately after the collision he was carried to the clinic of the Ordnance Plant where he was treated for five days. He was then carried to his home in Shreveport and was there confined for two and one-half weeks. He then returned to work and gradually regained his former good physical condition.
We are not prepared to say that the amount awarded him by the lower court for pain, suffering, etc., is inadequate. It is not manifestly so, anyway.
The judgment appealed from is correct; it is affirmed with costs.
 *Page 200