Plaintiff, individually and as father of his minor son, Joe A. Murry, filed suit against defendants, the driver, owner and liability insurer, respectively, of the truck which he alleged caused personal injury and property damage in a collision with plaintiff's automobile.
The petition alleged that plaintiff's son was driving plaintiff's automobile westerly along California Avenue — U.S. 80 — in the city of Ruston, Louisiana, and approaching the intersection of South Trenton Street at approximately 7:00 p.m. on the night of December 28, 1946; that defendant's truck and trailer was loaded with steel beams so long that the coupling pole between the truck and trailer was ineffective and the sole tie-in between the truck and trailer was the load of steel beams; that at the time defendant's truck entered the intersection, his son was approaching same on the favored four lane highway, while defendant's truck came into the favored street without stopping; that the truck driver did not pass beyond the center of the intersection before beginning his left turn as required by the highway act; that the driver made the highly dangerous left hand turn without ascertaining that he could enter the favored street without jeopardizing the safety of those already using same and that his son saw the headlights of the truck and a light on the rear of the truck portion of defendant's vehicle but no lights on the side of the trailer to indicate that the highway was blocked; that the trailer had no bed or sides, and, since the beams were four feet or more above the pavement, plaintiff's son could see beyond the trailer and did not see the beams until he was within a very few feet of same; that he made a swerve to the right but the trailer had blocked his means of entry into South Trenton Street by cutting the corner short; that his son was driving at a safe speed, had dimmed his lights and was exercising reasonable care and, under the circumstances, was justified in believing that the truck was not pulling a trailer.
After an exception of no cause or right of action was overruled, defendants filed a joint answer admitting ownership, liability coverage, etc., of the truck involved and setting forth that the truck made a left turn into the highway in a legal manner and alleged that the accident occurred as a result of Murry's driving at a reckless speed, too great to stop within the distance illuminated by the car's headlights; that young Murry saw the lights on the truck, including two side clearance lights, when he was a sufficient distance to have stopped before striking the trailer; that after discovery of the truck, Murry began to move his car to the right, but he did not slow down or take other steps to bring the car under control and that Murry failed to keep a proper lookout and see the clearly visible and properly lighted trailer. In the alternative, defendants alleged that should the Court find any negligence on the part of the truck driver, plaintiff's recovery is barred by the contributory negligence of his son as set forth above.
The District Court, after trial on the merits, gave judgment for $1388.60. Defendants have appealed. Plaintiff answered, asking for an increase in the judgment to $6,000.00.
At the time of the accident, defendant's truck was loaded with two layers of steel beams, each eight inches high, one end of the beams was chained to the bolster slightly in rear of the truck cab. Chains were placed around the beams at two points along their forty foot length and in front of the trailer. The rear portion of the beams was chained to the trailer bolster. *Page 822 
The over-all length of the truck-tractor, channel iron beams and trailer with bolster was fifty-five feet.
The driver testified that as he reached the four lane highway from the less favored street, he stopped the truck and, seeing no traffic in either direction, proceeded into the highway and into his left turn; that he devoted his attention to the trailer, the wheels of which were some thirty-five feet in rear of the truck, and did not notice plaintiff's car until it was within ten or fifteen feet of striking this load; that he had two headlights burning, five clearance lights on the cab and three string lights on the load and that the truck-tractor portion of his vehicle had passed the center of the street and was on its own right side.
Young Murry testified that at the time he first saw the truck the front portion had half way turned so he saw one headlight and enough other lights to indicate to him that it was a stake body truck almost completely on its own side of the four lane highway; that he took his foot off the accelerator and eased over to the right side; that his lights were on dim and did not illuminate the steel beams until he was a few feet away, when he and his companion saw the rear wheels as they entered the highway and that he made a sudden turn to the right but there was insufficient room between the load and the east curb of Trenton Street, and the collision resulted.
Murry's companion said he saw the truck's headlights and cab lights and noticed that young Murry eased off the accelerator. He did not realize that the highway was blocked by a lengthy vehicle until Murry's dimmed headlights showed up the wheels and Murry yanked the car to the right. He testified that the car was close to the right curb, and that there was not room enough between the rear trailer wheels and the east curb of Trenton Street for the Murry car to pass through when its driver turned sharply to the right in his efforts to avoid the accident. This fact was verified by the filling station operator who immediately came to the scene. He also testified that the coupling pole (a short length of which extended forward from the trailer and was tied to the bottom of the steel beams when the collision occurred) had come through the car grills; that the steel beams were across the car, which was three feet from its right curb, and extended back into Trenton Street.
The facts surrounding the collision are not in serious dispute. The truck had an over-all length of fifty-five feet. Its load of forty foot steel beams rested on the front and rear bolsters with a distance of approximately thirty-five feet in which the beams became both load and coupling pole. With this type of long load, the front portion of the coupling pole could not be used and was discarded. The rear portion was chained to the bottom of the beams near the rear wheels. The truck had normal headlights with a row of lights over the cab and a clearance light at the front, center and rear of the forty odd foot space behind the cab. The four lane highway was thirty-six feet in width. The front wheels and tractor wheels (as distinguishable from trailer wheels) had crossed the center line and the truck-tractor portion of the vehicle had assumed its normal east-west direction on the south half of the highway. At the time of the impact the forty foot steel beams extended diagonally from the front (tractor supported) bolster across the two north lanes of the four lane highway and into Trenton Street. When plaintiff's car was approximately fifteen feet away, his dimmed lights revealed the trailer wheels as they entered the highway. It was then that plaintiff's son turned or yanked the car to the right, too late to stop it from going in under the steel beams (whose bottom was four feet three inches above the highway) and ramming the coupling pole through the car, striking the trailer wheels and bolster and causing the steel beams to fall across the hood.
[1] At the time of impact, the truck had negotiated the north eighteen feet of the highway and covered ten to twenty feet along its easterly route and was traveling approximately ten miles an hour. Granting that the driver had stopped at the intersection, a fair estimate of his average speed in covering this twenty-five *Page 823 
feet would be approximately five miles per hour. The driver of the car and his companion placed the car's speed at approximately twenty-five miles an hour. Supposing that the car was traveling nearer fifty miles an hour than twenty-five, it would have, since the truck entered the intersection, covered about two hundred fifty feet or slightly less than the length of the city block. From all of the testimony, we conclude that at the time the truck entered the intersection its driver could have seen and should have seen plaintiff's automobile as it approached on the favored highway. This driver in charge of such a vehicle should not have entered the highway to begin the hazardous left turn under the circumstances. Sibille v. Highway Insurance Underwriters, La. App., 12 So.2d 625, 630. The language used by Judge LeBlanc in that opinion from the First Circuit is applicable to the truck driver's situation in the case before us:
Considering the relative importance of the two roads and that Mr. Sibille was to make a left hand turn from the inferior of the two, he was under a stricter obligation of care and duty than was the driver of the truck. It has repeatedly been held that making a left hand turn under such circumstances is one of the most dangerous maneuvers with which the driver of an automobile is confronted."
The above is particularly applicable in this case where the truck driver was proceeding into the highway with a vehicle fifty-five feet in length (five-feet above legal maximum) and with a load presenting a scarcely visible profile to an approaching motorist.
At the time of the collision, the trailer wheels were so close to the east curb of Trenton Street that there was not room for plaintiff's son, who made a sudden right turn in an effort to avoid the collision, to pass between the truck and the curb and plaintiff's theory is that defendant's driver had cut the corner and thereby violated the highway law requiring one making a left turn to keep to the right of the intersection center and that this was a separate act of negligence contributing to the accident. We do not think the record clearly establishes that it would have been possible for the driver to have successfully turned the fifty-five foot vehicle to the left in the highway and keep the entire vehicle to the right of the intersection center. The fact that the truck driver's left half of Trenton Street was not left clear was not an act of negligence considering the length of the vehicle. However, the fact that his vehicle was of such length as to make the following of this rule difficult or impossible makes it the more important that the truck driver not enter the favored highway and begin the hazardous maneuver of making his left turn from a less favored street into the main traveled highway until he was sure that same would not involve traffic already on the highway and visible to him at the time of entering.
Having found that the defendant was guilty of negligence, we next consider defendants' charge that the son's contributory negligence should bar plaintiff's recovery.
Had the defendant's truck and trailer been of the van type or other normal load, plaintiff's son would have been guilty of contributory negligence under the well established doctrine that the operator of an automobile must operate his car at such speed and exercise such vigilance as to stop within the distance illuminated by his headlights. Sexton v. Stiles, 15 La. App. 148, 130 So. 821. Hutchinson v. T. L. James Co., Inc., et al., La. App., 160 So. 447. Radovich v. Stipelcovich et al., La. App., 32 So.2d 394, and cases there cited.
[2] However, the rule that the failure of the driver of a moving vehicle to observe an obstruction — usually in the form of a stationary object — constitutes such contributory negligence as to bar recovery is not a hard and fast rule. As stated by the Supreme Court in Gaiennie v. Cooperative Produce Co., Inc., et al., 196 La. 417, 199 So. 377, 379:
"* * * the general rule is not inflexible * * * its application depends on the facts and circumstances of each case." *Page 824 
In the case before us, the obstacle across the right side of the highway as plaintiff's son approached the intersection presented a profile only sixteen inches in thickness. It was of dark color and was suspended a little more than four feet above the pavement. Lights of the town and of far away approaching vehicles could be easily seen underneath as well as above this comparatively thin silhouette. The single small clearance type light provided to illuminate the approximately thirty feet of dark silhouette between the front and rear bolsters gave no adequate warning of the presence of this unusual road block. The fact that the lights were dimmed threw the beam downward and under the steel beams. The record shows that the driver did see the wheels of the trailer as they entered the highway and were illuminated by his lights and that he promptly turned to the right in an effort to avoid the collision.
[3] We believe that the case at bar presents an exception to the general rule that one who runs into a object on the highway is guilty of contributory negligence and that plaintiff is entitled to recover under the authority of Holloway v. Pure Oil Co., 17 La. App. 584, 135 So. 381, and as set forth by the Supreme Court in Gaiennie v. Cooperative Produce Co., et al.,196 La. 417, 199 So. 377.
In the Holloway case, supra, the plaintiff was allowed recovery when he ran into a load of long iron pipe. The manner of loading the truck and the relative position of the vehicles were strikingly similar to the case before us. At the time of the Holloway accident there was a mist or drizzle of rain. However, in the Gaiennie case, supra, the Supreme Court absolved a plaintiff who, after meeting other cars with lights, collided in fair night weather with the rear body of a truck which "was some 3 or 4 feet above the ground and extended back some four feet over the rear wheels, so that when plaintiff dimmed his lights the tilted beam of his headlights projected under the truck making it that much more difficult for him to see it."
In cases of unusual obstructions, the facts and circumstances of each case must be considered. In the one before us we conclude that the driver of the car had sufficient reason, under the existing facts and circumstances, to absolve him from negligence in not sooner seeing the steel beams which obstructed his path.
[4] There is considerable conflict in testimony as to how well the truck load was lighted, and there was introduced in evidence a small side or clearance light designed to show orange to the front and rear and amber to the side. The small light is contained within a galvanized iron shield. The portion exposed to the side (which would have been the only light in front of plaintiff's son on his side of the road) has an opening of approximately three quarters of an inch in diameter. The evidence does not show how securely this little light assembly was fastened on the steel beams, and had it been loosely fastened and turned to any appreciable degree either up or down, its sheath could have easily shielded it in whole or in part from the driver's frontal view. Bearing in mind that the burden of establishing contributory negligence is on the defendant alleging it, and that the rear lights on the trailer were not visible at all to plaintiff and that all lights on the truck and tractor except the small one under discussion were already across the center line and on the south side of the road, we find that the presence of this one small shielded light along the thirty foot expanse of steel beams was not a sufficient lighting to warn plaintiff's son under the circumstances. This view is strengthened by the fact that it is not shown in the record that the light was fastened on the steel beams in such a way as to insure that its protecting sheath did not also operate to shield its rather puny warning rays from the eyes of the approaching driver.
Defendants have made the point that "when a car runs into a truck with such force as to be demolished, it is self evident that its rate of speed was so great the car could not be stopped within the distance illuminated by its headlights or else he was not keeping a proper lookout and, therefore, its driver was guilty of contributory negligence of a character to bar recovery. Hogue v. Akin Truck Line et al., La. App.,16 So.2d 366." *Page 825 
The petition states that plaintiff's car was damaged to such an extent that "his insurer paid him full value therefor except for the sum of Fifty Dollars ($50.00), which amount was deductible under petitioner's insurance policy."
[5, 6] The burden is upon a defendant alleging contributory negligence to establish same. The record shows that the rear portion of the coupling pole was rammed through the grille and cowl of plaintiff's car and that after the trailer wheels were struck, the load of steel beams fell across plaintiff's car. Had the entire coupling pole been on the truck and the load been a normal one, this would rather conclusively show an excessive speed. However, the evidence does not disclose just how firmly the coupling pole was chained to the steel beams nor how well the beams were secured to the rear bolster. Under these circumstances, we do not find it established that the force with which the car struck the truck was the principal cause of it being demolished. It being open for question that the manner in which the beams were loaded was a factor in the extensive damage to the car.
In the Hogue v. Akin Truck Line, La. App., 16 So.2d 366, 368, above cited, the Court stated:
"The facts that his car was demolished, and he was seriously, injured indicate clearly that the impact was heavy."
It is logical to assume that when a car is badly demolished on impact with a stationary object that its speed was high. However, the case before us differs from the Hogue case above in that the driver was not seriously injured nor was the defendant's truck stationary. The forward momentum of the 25,000 pound load even at moderate speed was a definite factor in the extent of damage and the contribution of the momentum of defendant's massive vehicle to the extent of damage done plaintiff's car is further increased by the fact that the heavy steel beams fell across the car.
We have examined the testimony as to injuries to plaintiff's son and his resulting scars and find that the award of the District Court was reasonable and does substantial justice.
The judgment is affirmed, with costs.