These are two damage suits which were consolidated for trial in the district court and for argument in this court. They both grow out of the same accident which resulted from a collision between an automobile and a truck, at about nine o'clock on the night of February 2, 1940, on Highway 90 or the Old Spanish Trail as it is called, as it enters the City of Crowley, in the Parish of Acadia.
The plaintiffs, respectively, are Mr. Joseph A. Sibille and his wife, Mrs. Louise Guilbeau Sibille. The defendant in the suit of Joseph A. Sibille is the Highway Insurance Underwriters, which carried public liability insurance on the truck which was involved in the accident and which belonged to A.W. Herpin Truck Line, Inc. In the suit of Mrs. Joseph A. Sibille, both A.W. Herpin Truck Line, Inc., and the Highway Insurance Underwriters are made parties defendant.
With the exception of the allegations relating to the damages claimed, both petitions are substantially the same. In each it is alleged that Mr. Sibille and his wife were traveling by automobile from Crowley, where they had visited their son, Dr. Howard Sibille, to their home near Sunset, Louisiana; that Mr. Sibille was driving his car and proceeding in a careful and cautious manner, and with all due regard for his own safety and that of his wife. That as they reached the Old Spanish Trail from the street on which they were driving, in an easterly direction, he brought his car to a complete stop, carefully looked in both directions for approaching traffic on the highway and then successfully turned into the said highway, and having reached his right hand side thereof, was proceeding north when he was suddenly faced with the truck of A.W. Herpin Truck Line, Inc., which was being driven at a very excessive speed. It is further alleged that the said truck was heavily loaded and, as it approached the automobile, the driver lost control of it and crossed from his right hand side of the highway over on to the left, which was the side the automobile already occupied and, as it did so, collided almost head-on with the automobile, without in any manner halting its speed. It is further averred that the truck swung the automobile around, crushing the left rear *Page 627 
side thereof, and that it then left the highway and ran into a mud puddle on the side of the pavement for a distance of about one hundred and ten feet. It is also alleged that the truck was being run and operated by a party by the name of Guest, an employee of A.W. Herpin Truck Line, Inc., who was at that time acting in the course and scope of his employment as a truck driver, and that his acts of negligence, which are detailed as follows, were the proximate and immediate cause of the collision: (1) That he was driving the truck at an excessive rate of speed on a heavily traveled highway; (2) that he failed to slacken his speed around a curve on the highway before reaching the point of the collision; (3) that he failed to observe the automobile in time to avoid striking it; (4) that he failed to bring his truck under control so as to be able to stop or swerve to the side and avoid the collision: and (5) that he failed to continue on his right side of the highway, which was then unobstructed, but instead, he crossed over to the side of the road on which the automobile was, where he collided with it.
In his petition, Mr. Sibille alleges that he sustained the following damages, which he is entitled to recover from the defendant Highway Insurance Underwriters: Repairs and labor on his automobile, $340.28 medical, nursing and hospital bills incurred by him for the treatment of the injuries sustained by his wife, $170.50, making the total amount of his demand $510.78. In her petition, Mrs. Sibille alleges that she sustained the following injuries: (1) Complete fracture of the upper portion of her right arm; (2) a lacerated scalp wound, extending across the entire forehead; (3) severe systemic shock; (4) severe pain, discomfort and suffering because of her injuries; and (5) nervous shock and mental suffering as well as anxiety occasioned by the collision and the injuries she received. She sets out in detail the pain she suffered and the discomfort and nervousness for which she was obliged to take sedatives and opiates in order to obtain rest. She asks $1,250 for her pain and suffering, $1,500 for permanent injury to her right arm, $2,500 for physical nervousness and emotional impairment of her general health, $2,000 for the permanent disfigurement and scar on her forehead, and $1,000 for shock, fright and mental suffering, all aggregating the sum of $8,250.
The answers of both defendants are substantially the same. In both it is denied that the driver of the truck, whose name is said to be Bernice Guest, was negligent in any manner as set out in the petitions of the plaintiffs, and it is further alleged that, on the contrary, he observed the approach of the Sibille car toward the highway and had perfect control over his truck. It is further alleged that he was going at about thirty-five miles an hour, on the right hand side of the highway, and when some distance away, noticed the lights of a car coming on a small gravel road which entered the highway, at a very slow rate of speed. That he blew the horn of his truck and as it appeared to him that the car was about to stop before entering the highway, he continued on in a careful and prudent manner. That just as he reached the intersection, the automobile suddenly came on to the highway and its front center struck the right front fender of the truck. It is alleged that as soon as the automobile darted into the highway, the truck driver put on his brakes and swerved to his left, but because the automobile was so close he was unable to avoid the collision which followed.
It is specifically alleged that the driver of the truck was at no time guilty of any negligence whatsoever; that he did everything in his power to avoid the accident, and that the sole and proximate cause thereof was the gross carelessness and negligence of the driver of the automobile in coming into the highway from the side road, immediately in front of the truck, without looking or taking the necessary precautions in such a situation, and, further, that the negligence of that driver created an emergency from which the driver of the truck could not, using all due care, extricate himself.
On the issues as thus presented to him, the cases were tried before the district judge, who, after trial, rendered judgment in the suit of Mr. Sibille, in favor of the defendant, dismissing that suit at plaintiff's costs, and in the suit of Mrs. Sibille, awarded her judgment against both defendants, in the sum of $2,500. The defendants appealed from the judgment against them in favor of Mrs. Sibille, and Mr. Sibille has appealed from the judgment which was rendered against him dismissing his suit.
The trial judge did not assign any written reason for judgment in either case. From *Page 628 
the disposition he made of both, however, it is to be inferred that he concluded that the drivers of both vehicles were negligent and at fault, as he would not have otherwise dismissed the suit of Mr. Sibille. After having carefully considered the records in both cases, we find that there is little difficulty in agreeing with him in his disposition of Mr. Sibille's suit, but we are constrained to disagree with him in the suit of Mrs. Sibille, in which he rendered judgment in her favor.
The only eye-witnesses to the accident were Mr. and Mrs. Sibille themselves, the truck driver, Bernice Guest, and a party by the name of Neelis David, Guest's helper, who was riding in the truck with him, and two other parties who were following the Sibille car in another automobile. Of these last two witnesses, only one, Albert Foreman, testified, as the other party was not available at the time of the trial. Mrs. Sibille did not testify, as it appears that her condition, due to nervousness, would not permit her to appear in court at the time. The testimony of both the truck driver, Guest, and his helper, David, was taken by deposition, as Guest at the time had left the Parish of Acadia, and David had enlisted in the United States Navy. There were several other witnesses called, but their testimony was restricted to things and matters said to have been observed at or near the scene of the accident either the night it happened or early the following morning. The remainder of the testimony in the case has to do with the medical attention and nursing given Mrs. Sibille for her injuries, and that of the witnesses who testified concerning the damages to the Sibille car.
It appears that on the day of the accident Mr. and Mrs. Sibille, who we understand are rather settled people, had visited their son, Dr. Howard Sibille, a dentist in Crowley. According to Mr. Sibille's own testimony, he and his wife had left Crowley at about nine o'clock. He was driving the car and, in order to reach the Old Spanish Trail on which he was to drive to go back to their home near Sunset, he was traveling on a little gravel road which intersected the highway. He says that before getting on the paved road, he looked to his right and to his left. He then appears to be a bit confused about the directions from which he saw vehicles approaching as he looked up and down the highway, but his testimony is made clearer later on when he is asked the specific question if he saw the truck coming and he says that he did as he could see cars coming from as far as the over-pass. He saw the truck when it made the curve in the highway and, when he got up to the intersection as it had just then rounded the curve, he kept on to the pavement as the highway was clear from the other direction. It was when he had completed the turn, which naturally was a turn to his left, that the truck collided with his car. Although in both petitions it was alleged that he had brought his car to a complete stop, Mr. Sibille testifies that he could not say whether he stopped or not. He states that he imagines that there was a pause. When asked the specific question why didn't he wait in the gravel road for the truck to pass, he answers, "Well I thought I had plenty of time to make the curve and I did have plenty of time because I negotiated the curve." Mr. Sibille insists that the collision occurred to the north of the intersection and on his right hand side of the pavement as he was facing the north after he had already turned his car in the intersection.
On cross-examination, it was brought out that the curve which he refers to, where he first saw the truck as he neared the highway, is twelve hundred feet, or possibly more, from the intersection. That was the first time he saw it. He then says that he saw it again just as he got on the paved road and it was then some five or six hundred feet from the intersection. He seems to be positive that the collision was not a head-on collision but says that he knows what part of the two vehicles struck each other, only from hearsay. According to his judgment, it was the front left fender of both vehicles that struck each other. He gives no accurate estimate of the speed at which the truck was going but says that it was going fast. Mr. Sibille naturally was concerned over the condition of his wife, who was rather severely injured, and made no particular observation of the location of the scene of the accident immediately following the collision.
The driver of the truck, Bernice Guest, in giving his version of the accident, says that as he came down the highway he saw the car which turned out to be the Sibille car coming on the gravel road that leads into the highway and stop as it reached the intersection. When he first saw it coming he had slowed down, but as he saw it stop, he resumed his speed and kept going on. *Page 629 
Just as he started to go by it, it looked to him as if the driver of the car had shifted gears and ran right into the truck, hitting it on the right front fender and pushing it over into the ditch across the pavement. He was fully a quarter of a mile away when he noticed the car and had a clear view of it. Realizing its presence near the highway, he took the necessary precautions by slowing the speed of his truck and then, after seeing that the car had stopped, prepared to go by by increasing his speed again. He says that it was the front portion of the car that struck the front fender of the truck and states that the collision occurred in the middle of the pavement just about ten feet from where the car had turned into the highway in the direction of Rayne, which would be ten feet north of the intersection. As the truck was struck, he says that its wheels locked and it went into the ditch on his left hand side and beyond the gravel road intersection. The Sibille car, after striking his truck, was kicked around, the back end hitting the trailer of the truck and the car itself being headed towards Crowley, or to the south, as it came to rest in the middle of the road. This driver estimates that he was between fifty and seventy-five feet from the gravel road when the Sibille car came on to the highway, and is positive that the Sibille car had never gotten across the pavement before it ran into the truck. He states that he was going about thirty-five miles an hour and that although he pulled to his left as quickly as he could and applied his brakes, it was impossible for him to avoid being run into.
Neelis David, the truck driver's helper, whose testimony was taken by deposition before a Notary Public in California, substantially corroborated Guest in every particular. He estimates the speed of the truck at thirty-five miles per hour and says that it was lowered when, within about one hundred feet from the gravel road, the Sibille car was observed slowly coming to a stop at the intersection. After the Sibille car had stopped, Guest accelerated the speed of his truck and just then the automobile came into the highway and the accident occurred.
Albert Foreman, the witness who was riding in a car back of the Sibille car, says that he saw the truck coming down the highway and heard the driver blow his horn as he approached the gravel road. He estimates that it was going at thirty-five miles an hour. His testimony is that the Sibille car pulled onto the highway in front of the truck. The truck driver tried to turn to his left but could not do so in time to avoid being struck.
The physical facts relating to the damage to the two vehicles, as well as the photographs introduced in evidence, all tend to indicate that the left front end of the automobile collided with the right front end of the truck, and not the left front end of both vehicles, as judged by Mr. Sibille.
On the basis of the testimony already discussed, it is plain that Mr. Sibille was at fault and that his fault bars his recovery. The important and vital question therefore is whether there was any negligence on the part of the driver of the truck whatever, or whether Mr. Sibille's negligence was the sole and proximate cause of the accident. If the truck driver was not negligent and Mr. Sibille's negligence alone was the producing cause, it follows that his wife cannot recover from the defendant owner of the truck or its insurance carrier. Fuld v. Maryland Casualty Co., La.App., 178 So. 201; Session v. Kinchen, La.App., 178 So. 635.
Counsel for Mrs. Sibille seem to rely on the speed of the truck and the driver's action in turning to the left side of the highway, to convict him of negligence which is said to have been the principal or the producing cause of the accident. They stress the physical facts showing the place and position in which the respective vehicles came to rest after having collided with each other. They contend that the distance traveled by the truck, in a ditch along the east side of the highway, indicates the excessive speed at which it must have been going and they also rely on the testimony of certain witnesses who observed skid marks on the pavement, to show that the actual collision took place after Mr. Sibille had already crossed over to the east side of the pavement and had headed his car north.
With regard to the speed at which the truck was going, save for the circumstances of it having gone a distance of one hundred ten feet from the point of collision, after the accident, there is no other testimony in the record but that it was going at about thirty-five miles an hour as it approached the intersection from the over-pass, about a quarter of a mile away and at which time Mr. Sibille says he first saw it. Mr. Sibille does not even estimate the rate of speed at which it was going, simply saying that it was going *Page 630 
fast. According to the testimony of the driver and his helper, the rate of speed of the truck was decelerated when the driver observed the Sibille car coming toward the highway and after both these witnesses saw the car coming to a stop, as they testified, its speed was again accelerated. To describe his movement just at that moment, the truck driver used the expression that he "just poured the gas to it." Counsel for the plaintiffs make much of this expression to indicate his carelessness and recklessness in driving. We would rather think that this driver meant to emphasize the fact that he speeded up just at the moment when he suddenly became confronted with the Sibille car coming into the highway after he thought that by its having come to a stop, the driver would wait until he had passed by. That would seem to have been the natural thing to do and, as he also says he did, to pull over to his left in an effort to try to pass in front of the on-coming car. The increase in his rate of speed at that moment, no matter what the rate might have been, was justified and no doubt that helped to propel the truck forward after the collision had taken place.
The proof fails to convince us that the Sibille car had already crossed over to the east side of the pavement and turned toward the north when the collision occurred. If, as Mr. Sibille's testimony would tend to show, it was the left front fender of both vehicles that came into contact, such proof would give some support to his contention, but, as shown by the photographs that were introduced in evidence, that was not the point of contact. Besides, the testimony with regard to the skid marks that were observed by the witnesses who came to the scene of the accident and which is relied on for added proof on that point, is not satisfactory, as, for the most part, these witnesses, in locating the particular skid marks of the respective vehicles, depended more or less on what Mr. Sibille himself told them was the position of the vehicles on the highway at the time they collided. One thing seems to be certain and that is that the actual collision took place at a point on the pavement almost on a line with the mail boxes that were located immediately opposite the intersection of the gravel road and this, in our opinion, disproves the contention that the Sibille car had already made its turn on the pavement and was headed north on the highway when it was run into.
We do not think therefore that the testimony justifies the conclusion that the truck driver was traveling on his left hand side of the highway, which of course would have been gross negligence on his part, but rather we believe the preponderance of the testimony to be that the driver merely veered to his left in his final effort to pass in front of the automobile when he saw that a collision was imminent.
It is rather significant that after the truck driver had testified that at the scene of the accident, in speaking to Mr. Sibille, he said: "Good God, man, didn't you see me coming down the highway," to which Mr. Sibille answered, "I did not see anything", and that Mr. Sibille would not deny that that had taken place. Under the circumstances as we view them, the truck driver seems to have exercised rather good judgment, in turning to the left when he did, for otherwise, as he says: "Well, if I would not have turned to the left, I would have hit right square in the middle of his (Sibille's) car and probably killed both of them."
Considering the relative importance of the two roads and that Mr. Sibille was to make a left hand turn from the inferior of the two, he was under a stricter obligation of care and duty than was the driver of the truck. It has repeatedly been held that making a left hand turn under such circumstances is one of the most dangerous maneuvers with which the driver of an automobile is confronted. In Blashfield's Cyclopedia of Automobile Law and Practice, vol. 2, p. 247, § 1046, it is stated that "Under many statutes and ordinances, it is the duty of a motorist, before turning to the left into an intersecting street, to pass to the right of the intersection of the centers of the ways" and that "a driver violating such a regulation, resulting in a collision with an automobile approaching on the intersecting street, will commonly be held liable for the injuries resulting from such collision, * * *." We have such a provision in our State Highway Regulatory Act in effect at the time of the accident in this case. See Rule 9 (b), Sec. 3, Title II, Act 286 of 1938. Of course, Mr. Sibille's contention is that he had observed the duty of going past the center of the intersection before making his left turn to the north, but as we have already stated, the preponderance of the evidence does not support him and rather it shows that he cut to his left too soon and almost in *Page 631 
the path of the approaching truck. It strikes us therefore that not only was he grossly negligent but that his violation of the rule as laid down in the statute made him liable for the consequences following the collision.
Further we are of the opinion that the driver of the truck is relieved from negligence for the reason that, after seeing that Mr. Sibille had brought his car to a stop, or even "paused" as Mr. Sibille now says he did, he had the right to assume that the latter intended to recognize his right of way and was going to remain where he was and let the truck proceed on its way in front of him. In Blashfield, same volume as just quoted from, at page 223, § 1036, the rule is stated as follows: "Where both drivers approaching an intersection at approximately the same time slow down, the one having the right of way is justified in believing that the other driver intends to recognize such right of way and to increase speed to pass the crossing."
Satisfied, as we feel, that the driver of the truck was not negligent either in resuming his speed after having slowed down, nor in turning to his left at the moment he did, and that this unfortunate accident was caused solely and entirely by the negligence of Mr. Sibille, we are compelled to reverse the judgment in the suit of Mrs. Sibille.
A separate decree will be entered in each case, the one following to serve in that of Joseph A. Sibille.
For the reasons stated, it is ordered that the judgment in the case of Joseph A. Sibille v. Highway Insurance Underwriters be and the same is hereby affirmed at the costs of the plaintiff, appellant herein.