This suit arises from a collision which occurred on October 17, 1944, at about 6:30 p.m., on U.S. Highway 90, at its intersection with Louisiana Highway 59, or the Weeks Island Road, in the Parish of St. Mary, between a passenger bus owned by plaintiff, being then driven by plaintiff's employee, Wesley Barras, and a motor truck owned and being operated by the defendant.
Plaintiff's bus, with 27 defense workers, was travelling east on U.S. Highway 90, in the direction of Jeanerette. Defendant, with two companions, was travelling north on the Weeks Island Road. Plaintiff avers that defendant drove his truck into the intersection, striking his passenger bus at the left rear corner, causing damages to his bus to the amount of $543.51, for which damages he seeks judgment against defendant. He avers that the accident was caused solely by the gross negligence of the defendant.
The defendant, in answer, denies that the accident was caused by his negligence. In the alternative, he avers that Wesley Barras, plaintiff's driver and employee, was guilty of contributory negligence in that said Barras did not have his bus under control; did not keep a proper lookout, in that he could have avoided the accident by stopping or by slowing down or by driving his bus to the right on the dirt shoulder; by driving his bus at an excessive speed of 65 miles per hour; and that Barras had a clear vision of defendant's approach. In the further alternative, he invokes the doctrines of last clear chance and of discovered peril.
[1] Upon these issues the case was tried, resulting in a judgment for plaintiff in the amount of $343.50, which the trial judge found to be the damages suffered by plaintiff for repair to his bus, disallowing the sum of $200 for the replacement of the wooden body of the bus. Defendant has appealed. Since plaintiff has not answered the appeal, the question of the damages to the body of the bus is no longer an issue before this court.
In this court, defendant concedes his negligence, but contends that plaintiff's employee was guilty of contributory negligence as set out in his answer, and that plaintiff's employee had the last clear chance and that the plaintiff failed to prove his demand.
U.S. Highway No. 90, known as the Spanish Trail, is a paved main highway through the State from New Orleans to the west, having a paved width of 18 feet with dirt shoulders of approximately six feet in width on both sides and is straight for quite a distance east and west from the intersection. Louisiana Highway 59, or the Weeks Island road is a secondary or graveled route, generally running north and south, with its northern terminus at its intersection with U.S. Highway 90. Traffic travelling north on Highway 59, upon reaching the terminus, therefore, has to turn either east or west into U.S. 90. From the point of intersection of the two routes, on the Louisiana 59 there is a large traffic sign with the word "Stop". On U.S. 90, there are signs on both sides of the intersection, some 90 feet therefrom, with the words "Side Road", and another sign, at the intersection, pointing to Cote Blanche Bay *Page 373 
and Weeks Island. On the southeast corner of the intersection, about 14 feet from Louisiana 59, and 24 feet from the shoulder of Highway 90, is a church; also about 11 feet from Highway 90 there is a large tree with overhanging branches. About 46 feet east of this tree, forming part of the landscaping of the church and adjoining property, there is a large evergreen bush about nine feet from Highway 90. The above description of the locus in quo is taken from the written reasons of the trial judge, he having visited the locus in quo, accompanied by the parties litigants and/or by their respective attorneys, with permission to describe the same as he found them. The trial judge in his written reasons further states: "Having personally viewed these surroundings, it cannot be denied that these particular objects impair full vision on the part of traffic approaching the intersection from the east, until rather in close proximity thereto." From this description by the trial judge and his comment thereon, it is evident the intersection corner on the southeast is nearly completely blind and that it is hard for either driver coming from the east or south to see the other vehicle approaching the intersection.
[2] It is conceded that plaintiff's bus was travelling on a right of way road, as that road is a main travelled highway and the road on which defendant was travelling is a secondary or inferior highway. Thus a greater duty of care devolved on the defendant than on plaintiff's driver.
The evidence shows that Barras, plaintiff's employee, was travelling west with twenty-seven defense workers as passengers, two of whom were seated with the driver of the cab. Some 400 feet east of the intersection, he stopped to allow one of the passengers to alight. Thereafter he proceeded in his lane of travel, and on reaching the intersection, he was travelling at a speed of 25 miles per hour. According to Barras' testimony, he did not see defendant's truck at the intersection and proceeded on through the intersection. According to defendant's testimony, he stopped about four feet from the paved slab for some "five minutes", and perceiving no obstructions, he proceeded on. In order to proceed in his direction of travel, the defendant made a semi-circle in order to reach the east lane of travel on Highway 90. The preponderance of the evidence shows that the impact took place when plaintiff's bus had practically negotiated the intersection and the blow was by defendant's truck's right front bumper and fender to the rear left corner of plaintiff's bus, plaintiff's bus being some 28 feet long. The bus, after being hit, travelled some 230 feet, traversing from side to side, and finally upsetting facing east or in the opposite direction from which it had been travelling.
As stated supra, we find the preponderance of the evidence to the effect that Barras was driving well in his lane of travel, at a rate of about 25 miles per hour. In an effort to show that plaintiff's bus was travelling at a greater rate of speed than 25 miles per hour, defendant points to the fact that the bus travelled some 230 feet after the collision and turned over facing the opposite direction from which it came. To us, Barras offers a reasonable explanation as to why that happened. He states that he considered the safety of his passengers, and consequently did not attempt to put on his brakes nor to pull onto the right shoulder. It is evident that the blow was at or about the left rear wheel and that the blow had a tendency to cause the front part of the bus to go towards the left. It was his duty to attempt to keep his bus on the paved portion of the highway.
[3] Therefore, we eliminate the charge of negligence made against the driver of plaintiff's bus on the ground of fast and excessive rate of speed at which he was travelling before and after reaching the intersection.
[4] On the charge that Barras did not keep a proper lookout, in that had he kept a proper lookout he would have seen defendant's truck stopped some four feet from the pavement, defendant, in oral argument and brief, refers to the testimony of Barras to the effect that he did not see defendant's truck stopped at about four feet from the pavement and did not know that he had been run into until he heard the noise of the impact. Defendant argues that Barras is charged with having seen what he should have seen. We grant that a driver *Page 374 
is charged with seeing what he should see. However, in this case, considering the fact that the southeast corner of this intersection is a blind corner, and the further fact that a vehicle approaching the intersection from the south could not be discerned before practically reaching the intersection, Barras could rely on the fact that the defendant would have recognized his duty to stop and await his passage. If we would believe defendant's testimony that he stopped four feet from the paved slab for some five minutes, then more than ever this was an invitation to Barras to proceed on. We believe Barras' testimony that when he reached the intersection, defendant was not there, thus affording no reason to turn further to his right and/or upon the eastern shoulder of the road.
We, therefore, eliminate the charge of negligence on the part of Barras on the ground of his not keeping a proper lookout; and for the same reasons, we eliminate the plea of last clear chance and of discovered peril. We do not find anything Barras could have done to avoid the accident.
[5] The able counsel for defendant cites many cases dealing with intersectional collisions. After a careful review of the cases, we find that they are not apposite to the case at bar. Sufficient to say, after careful review of the record and the authorities cited by the lower court, we find no error committed by him in his statement that the sole and proximate cause of this accident was the gross negligence of defendant.
As to the quantum of damages, the trial judge, in his reasons for judgment, allowed plaintiff the sum of $343.50 for "damages to the chassis, fenders, tire, wheel, cab and other appurtenances". The defendant complains that there is no evidence to show that the damages enumerated were caused solely by the accident and therefore should not be allowed.
On the trial of the case, plaintiff produced an estimate by Doumit Garage, New Iberia, Louisiana, showing the following parts needed for repairs, 2 front springs; 2 windshields; 1 door glass; 1 hinge; 2 rear spring bolts; 1 wheel; 1 tire and 1 tube, totalling the sum of $139.26, and labor necessary in installing the same, labor to repair other parts of the bus, all totalling the sum of $204.25, or a grand total of $343.51, the amount awarded.
The testimony of Mr. Doumit, the owner of the garage, is that all of the material listed was used in the repair of the truck and that all of the labor charged was actually performed in the repair of the truck. He further testified that the bus was brought to his garage in a very badly wrecked condition. He states that the left rear tire and wheel were demolished; the front springs were broken; the windshield was broken; the right side glass was broken. He did not know the condition of the bus prior to the accident. But since the bus was being operated it stands to reason that it was not being operated in the condition it was when brought to the Doumit garage.
As against the testimony of Doumit, counsel for defendant stresses the fact that in the State Troopers' report of the accident and in their testimony, the only damage listed in the report and in the testimony of the troopers is the damage to the left side and body of the truck and which damage is estimated at $200. However, in the testimony of Trooper LeBlanc, he states that the body was all broken up and also the glasses, the left rear fender and the front fender were damaged. He did not notice the tires. The other State Trooper, Sgt. Gianfala, states that he did not make a close observation, but all tires seemed to be in good condition. He does not think any of the tires had been blown out.
[6] The State troopers did not check the damage in detail, and they only testified in regard to it in a general way. Certainly Doumit's testimony, which is in detail, should prevail over that of the troopers, and which testimony is sufficient to prove plaintiff's demand as awarded by the trial judge.
For these reasons assigned, the judgment appealed from is affirmed, all at defendant's costs. *Page 375