ELLIS, Judge.
At about 11:00 A.M. on August 31, 1953, plaintiff, Mrs. H. R. Bush, was walking down her paved driveway toward the street when she was struck from behind by a taxicab which was being backed out of the driveway toward the street. Mrs. Bush charges the driver of the cab with being guilty of gross negligence in failing to keep a proper lookout while backing the cab out of a private driveway and failing to see or, if he saw in failing to heed, Mrs. Bush while she was walking slowly down her driveway, and in failing to sound his horn. Mr. Bush claimed as damages medical expenses incurred by his wife as a result of the accident and $60 which he paid his daughter for doing the housework for a period of three weeks.
Defendant by way of answer generally denied the allegations of plaintiff’s petition and in the alternative plead contributory negligence “in that the said Mrs. H. R. Bush was not keeping the proper lookout and could have easily seen or heard the cab backing out of the driveway and taken other steps to protect herself,” and further that Mrs. Bush negligently fell into the side of the cab.
There was judgment in the District Court in favor of Mrs. Bush in the amount of $1,500 for all injuries, pain and suffering which she sustained. Judgment was *336 also rendered in favor of the plaintiff husband in the amount of $91 medical bill and $60 services while his wife was disabled, aggregating $151.
The defendant has appealed from this judgment and we fail to find either an appeal or answer to the appeal by the plaintiff, although counsel for plaintiff in his brief asks that the amount be increased.
There is very little disagreement as to the facts in this case. It is shown that the plaintiff husband owned the residence in which they kept a small apartment in the rear thereof, and rented the other part. On the day of the accident, Mrs. Bush and her friend, Mrs. Day, were in the kitchen of the apartment making coffee when the taxicab drove in the driveway with a Mrs. Parker who had purchased some groceries and who evidently lived, in an apartment in the same building. The taxicab stopped and the driver took the groceries in to Mrs. Parker’s apartment. When the taxicab drove in Mrs. Bush’s dog evidently was barking and also at the the same time a Mrs. Aull drove up to Mrs. Day’s home which was next to the Bush residence and separated by a fence. Mrs. Bush then went out to quiet the dog and to call Mrs. Aull to come to her apartment for coffee. In doing this she walked down her driveway toward the street. She testified the motor on the cab was running when she came out, while the driver testified it was not running. Be this as it may, the driver testified he was warned not to back into the flowers on the side of the driveway, that he looked, got in the cab, held the left door open and proceeded to back down the driveway without any other observation. He heard a grunt and thought he had struck a dog but it turned out to be Mrs. Bush who had been knocked down.
The driver of the cab stated positively that he never looked in his rear view mirror nor blew his horn. In fact, from his testimony, if he looked to the rear it was hurriedly done and beyond understanding as to why he did not clearly' see Mrs. Bush walking down the driveway.
Mrs. Bush testified that after she came around the taxicab she walked down the middle of the driveway and when she had gotten approximately half way, which was approximately 18 feet, that she was struck in the rear by the back bumper of the taxicab and knocked on her face. She did not hear the motor of the cab start, in fact, she did not know the taxicab was backing out until after she was struck.
The driver of the taxi gave some testimony to the effect that she must have been coming out of the bushes to the north, however, she never had called Mrs. Aull, and she would not have been returning with her mission incomplete. We believe that she was struck as she said she was and that the sole proximate cause of this accident was the failure of the taxi driver to exercise the degree of caution required of a driver backing his motor vehicle. There was no reason shown by this record as to why the taxi driver could not and should not have seen Mrs. Bush in this open driveway, and his failure to do so was negligent. The Judge of the District Court in holding the driver guilty of negligence cited Babbitt Motor Vehicle Law, Fourth Edition, at page 1141, Par. 1624, in which it is stated:
“A driver backing an automobile across a sidewalk should take precautions for the safety of pedestrians, and his admission that he did not know of the accident until after it had happened is cogent evidence that he was operating the automobile in a negligent manner. Backing a car out of a garage across a sidewalk without taking extra precautions to avoid passers-by is imprudence, and a driver who fails to look in so backing will be held negligent.”
Also, see Wright v. State Farm Mutual Auto Ins. Co., La.App., 57 So.2d 767; Levy v. White, La.App., 5 So.2d 28; Honeycutt v. Carver, La.App., 25 So.2d 99; Strehle v. Giaise, La.App., 46 So. 2d 685. These cases deal with the question of backing automobiles, and state that an *337 automobile operator driving from a private driveway onto a thoroughfare must be extremely careful but that where the automobile is being backed out the operator must be even more careful.
On the question of contributory negligence the trial judge has correctly disposed of this plea as well as the nature and extent of the plaintiffs injuries and the amount to be awarded Mr. and Mrs. Bush, and we therefore quote from his written opinion:
“We come now to a consideration of defendants’ alternative plea of contributory negligence on the part of plaintiff. Contributory negligence, such as will defeat a recovery in an action like the present, is the negligent act of the plaintiff, which concurring and co-operating with the negligent act of the defendants, thereby becomes the real, efficient and proximate cause of the injury, or the cause without which the injury would not have occurred. 'Here the negligent act with which plaintiff is charged, I assume, is that knowing the cab driver had to back out of the driveway to get to the street either she should not have walked in the driveway towards the street with her back to the cab, or if she chose to walk in the driveway she should have anticipated that the cab would back into her if she did not look and listen carefully for its approach.
“It must be remembered that when Mrs. Bush entered the driveway the cab driver was not even in the cab. He had gone into Mrs. Parker’s apartment to deliver groceries, which fact was known to Mrs. Bush. It would be unreasonable to say that Mrs. Bush should have known that before she could walk say thirty feet down her own driveway the cab driver, whose view down the driveway was unobstructed, would' likely back into' her.
“The evidence is clear that when Mrs. Bush entered the driveway the cab driver had not started his backward movement. This being true, even if it could be said that Mrs. Bush was guilty of any neg-ligence, the cab driver had the last clear chance to avoid the accident.
“This case is somewhat similar to but is different in several respects from the case of Cotton v. Butler, La.App., 39 So.2d 914, cited and relied upon by counsel for defendants. There the court evidently believed the defendant’s statement that when he started to back, he looked through his rear view mirror and took all necessary steps to avoid injury; and it also was impressed with the idea that Butler had no reason to expect that Cotton would be in or near the driveway because just a moment or so before, he saw him standing on his back porch.
“It is my opinion that the sole proximate cause of this accident was the cab driver’s failure to have seen what he should have and could have seen.
“The cases are numerous to the effect that a motorist is held to have seen what he could have and should have seen. Hardin v. Yellow Cab Co. of Shreveport, La. App., 1949, 38 So.2d 814; Prudhomme v. Continental Casualty Co., La.App., 1936, 169 So. 147; Iglesias v; Campbell, La.App., 1936, 170 So. 265, reinstated on rehearing, La.App., 175 So. 145; Butler v. Mississippi Foundation Co., La.App., 1937, 175 So. 887; Rose-Neath Funeral Home v. Cudahy Packing Co. of Louisiana, La.App., 1943, 12 So.2d 717; Gross v. Teche Lines, 1945, 207 La. 354, 21 So.2d 378; Firemen's Ins. Co. v. Boggs, La.App. 1945, 23 So.2d 630; Wyche v. Brian, La.App., 1947, 28 So.2d 143; Gachassin v. Richard, La.App., 1947, 28 So.2d 371; Fidelity & Guaranty Fire Corp. v. Ritter, La.App., 1948, 37 So.2d 349; Hirsch v. Kendrick, La.App., 1950, 43 So.2d 692; Haywood v. Fidelity Mut. Ins. Co. of Indianapolis Inc., La.App., 1950, 47 So.2d 59.
“For the reasons stated, I do not believe that the evidence shows that Mrs. Bush was guilty of contributory negligence. She should therefore be awarded judgment.
“The injuries sustained by Mrs. Bush are stated in a letter written by her at *338 tending- physician, Dr. Mosely, which by consent of counsel, was offered in evidence. It read as follows:
“ ‘We first saw the above patient in the office on 31 August 1953. She stated that she had been injured recently when she had been struck by a taxicab. At that time she was complaining of severe pain in the chest and both knees and was limping badly with a sprained ankle. On examination there was marked tenderness over the right chest. Both knees were tender and slightly swollen. The right ankle was swollen and tender and pain was elicited on motion. X-rays of the chest, both knees and right ankle were negative for fracture. We felt that the possibility of a fractured rib however was not completely excluded.
“ ‘Due to the severity of her symptoms she was placed on bed rest at home. We saw her on two occasions at the home. In September she came into the office on the 14, 17 and 22. On 22 September we found that she was improved and had very little residual soreness in the chest. She had full range of motion in the neck. The nausea which had been bothering her so much since the accident was beginning to disappear. Her legs and hips were still a little painful but were much better. Her ankle at that time was all right. She will have some slight residual discomfort for some time but we can find no permanent disability.’
“From the above report it appears that plaintiff has sustained no permanent injuries.
“After the accident she testified that she was in bed two weeks, and after that time, she says she was up and down about five weeks, during which time it was necessary to employ some one to do her housework. She claims to have suffered pain, dizziness and headaches for quite a while after the accident.
“Considering her testimony, the medical report and the testimony of her daughter, Mrs. Montgomery, I have concluded that Mrs. Bush’s injuries while painful were not serious and that as of the date of the trial she had fully recovered.
“The only proof offered as to the expense incurred by the plaintiff husband as a result of his wife’s injuries was that he owes $91.00 medical bill, and that he paid his daughter $60 for services while his wife was disabled.
“I have concluded that he is entitled to recover these amounts, aggregating $151.00.
“I have also concluded that an award of $1500.00 damages to the plaintiff wife for all injuries, pain and suffering she sustained will be fair and proper.
“For reasons assigned, judgment is rendered and will be signed in favor of the plaintiff, R. H. Bush, and against the defendant, in solido, in the sum of $151.00, with legal interest thereon from judicial demand until paid, and in favor of Mrs. H. R. Bush against all of said defendants, in solido, in the sum of $1500.00 with legal interest thereon from judicial demand until paid, defendants to pay all costs.”
Defendant objects to an item of $15 charged as costs for a report by Dr. Mosely which was made for Mrs. Bush. This report was introduced in evidence with the consent of counsel for defendant and stood in lieu of Dr. Mosely’s presence and testimony. Counsel for defendant possibly saved himself some money by allowing the introduction of this report rather than insisting upon Dr. Mosely’s presence. The fact remains that he agreed to the use of the report and the item of $15 was justly awarded.
We are of the opinion that the judgment of the District Court should be affirmed.